Benton *v.* Abner C. and James Roberts.

WARREN M. BENTON *v.* ABNER C. and JAMES ROBERTS.

One joint and several obligor cannot rescind an agreement made by both with their common creditor, and which operated a discharge, so as to compel his co-obligor, who does not consent to the rescission, to remain bound.   The obligation once extinguished, can only be revived against those who consent to it.

A receipt to one of two obligors *in solido*, purporting to be for his part, severs the obligation, and extinguishes it as to him who has paid.

A party may be bound by what is contained in an act between third persons, where it is proved that he had notice of it; and, as parol testimony is necessary and admissible to prove such notice, whatever took place at the time of notice, may, by the same kind of evidence, be proved as part of the *res gestæ.*

THIS case is brought up from the District Court for the parish of Carroll.   It was tried as to James Roberts before *Davis*, J., and as to the other defendant, before *Tenney*, J.; but the judgments against both defendants were delivered by the latter.

GARLAND, J. This action was commenced by the endorsee of three promissory notes, for the sum of $4380 each, drawn by the defendants to the order of Theodore D. Elliott, and endorsed by him, payable March 1, 1838, 1839, and 1840. The last note, on which there is a credit of $675, is said to have been mislaid. An attachment was taken out against one of the defendants who is a non-resident.

In the petition it is alleged that the defendants are jointly indebted ; but two of the notes are annexed to the petition and asked to be taken as a part thereof, and they are joint and several obligations ; and the prayer is for judgment for the amount due, as *appears by the notes* referred to.

The two notes produced, payable on the 1st of March, 1838 and 1839, were endorsed, without recourse, on the 24th of March, 1838.

James Roberts for answer admits, that he signed the notes, but says that they have all been paid, as will appear by an authentic act annexed to his answer, executed by Elliott on the 26th of March, 1838. He says the notes were, after their discharge, obtained surreptitiously by plaintiff, and without consideration. That so far from his being indebted to plaintiff, the latter is largely indebted to him, as he has repeatedly admitted. He alleges fraud, prays that the demand of plaintiff be rejected, and that the notes be cancelled and delivered to him.

To this answer is annexed an authentic act signed by Elliott, the payee of the notes, dated on the 26th of March, 1838, in which he acknowledges that all the notes are paid in full, and releases the mortgage given to secure them ; and the notary, in the act, says that the notes 'were produced to me, said notary, by the said Abner C. Roberts and James Roberts, here, in presence of the appearer ;' and he further says, that the notes and mortgage were executed before him on the day they are dated, and that they have his paraph *Ne varietur*, on their face. The recorder of mortgages is specially authorized to erase the mortgage, and make it null and void.

In addition to the positive release contained in this act, the notary was examined as a witness on the trial, and says that the plaintiff was aware of the contents of the act of release, and that he was interested in having the release made, as he had purchased of

James Roberts half of the land mortgaged ; and this statement is verified by an authentic act of sale from James Roberts to Benton, passed the next day after this release was executed. He also testifies to other matters, which will be hereafter noticed.

How any court could permit a transaction so simple as was presented by the pleadings in this case, to take the course that was pursued, and become as confused as it was made, is inconceivable. The parties have been allowed to enter into various other transactions, documents of various kinds have been received in evidence, as well as parol testimony, and the record is studded with bills of exceptions.

The defendants severed in their answers, though they rely upon the same grounds ; and A. C. Roberts annexes to his answer the same release presented by his co-defendant. The cause as to James Roberts was tried at one term of the court by one judge, and as to Abner C. Roberts, at a subsequent term, by another ; both permitted great latitude in the trial, and the record is swollen to a volume. There were two judgments rendered, condemning each defendant separately to pay the plaintiff $8760, with five per cent interest from the 11th of February, 1840, until paid ; from which both have appealed.

To attempt an investigation of all the ordinary and extraordinary points raised in the case, and a correction of the decisions made on them, would be a waste of time, and not promote the justice of the case, which is evidently one in which the parties do not understand their own rights, or are endeavoring, in the confusion they have created, to cheat each other.

From the mass of documents and parol testimony we have selected such, as we think will elucidate the matter, and enable us to give a correct judgment in the case.

Elliott, the payee of the notes, in 1836, sold the defendants a tract of land for $21,900, and the three notes sued on were, with others, and a mortgage, given to secure the price. Sometime after this purchase by defendants, they sold a portion of the same land to Henry and Wesley Roberts for $22,409 90, one fifth in cash, and four notes for $4480 18 each, were given, payable on the 1st of January, 1838, 1839, 1840, 1841, and a mortgage was retained to secure their payment. When the note from defendants to Elliott

became due, in March, 1838, he was about to proceed on his mortgage, to enforce the payment of it, and of the two others falling due in March, 1839 and 1840. To prevent this, the plaintiff gave Elliott thirteen slaves for these three notes, which were transferred to him, and as all parties wished Elliott's mortgage raised, it was done by the act annexed to the answers, the plaintiff being present and assenting, although he did not sign the release. The defendants, in payment of the three notes set out in the petition, then gave plaintiff three of the notes of Henry and Wesley Roberts, amounting to $13,440 54, each of them payable two months in advance of their own notes, but they did not endorse them. On these notes and the mortgage of H. and W. Roberts to J. and A. C. Roberts, Abner C. Roberts, in his own right, and James Roberts, for the use and benefit of Benton, the plaintiff, obtained an order of seizure and sale of the land, and A. C. Roberts and Benton became the purchasers of it, for two thirds of its appraisement, to wit : for $13,000 ; and the sheriff made them a deed for it, and put them in possession. Of this sale James Roberts has never complained, so far as the record informs us, and all parties appear to have well understood, that when the plaintiff took the three notes of Henry and Wesley Roberts, that the notes of defendants were discharged, and they would have been entirely, but that Abner C. Roberts insisted on becoming a partner with Benton in the purchase of the land, and so far as he was concerned, the understanding or agreement was revoked ; but it does not appear that James Roberts ever consented to its being annulled, and it is certain, Benton did not so consider it, for he proceeded, in the name of James Roberts, for his (Benton's) use, had the land sold, and realized $6500, which was more than the moiety of the three notes sued on.

It is not denied that Benton realized the sum of $6500 by the purchase of the land of H. and W. Roberts, but it is said, he ought not to give any credit for it, as the defendants did not endorse the notes when they gave them to him, which was to have been done. As to James Roberts, that can make no difference, as Benton used his name for his own benefit, and realized his half of the debt as effectually as if the notes had been endorsed. As to Abner C. Roberts, he was dispensed from his agreement to endorse the notes, by the subsequent arrangement between him and the plaintiff, and

their joint purchase of the land, which they afterwards held as equal partners.

It is further contended, that although James Roberts did pay the $6500 on these notes, yet as he is an obligor *in solido* with Abner C. Roberts, he is still bound for the whole amount of the notes sued on, and the plaintiff is entitled to a judgment against him, together with A. C. Roberts, for the balance of the debt. Had a payment of that sum been made on the notes by James Roberts, without any stipulation that he was to be discharged, there is no question the position assumed by the plaintiff would be correct; but when the notes of Henry and Wesley Roberts were delivered to him, the understanding was, if they were paid, that the defendants should be discharged from their obligations; and had the agreement been carried into execution, as at first arranged, the notes sued on would have been extinguished by payment. The only question remaining is, whether one joint and several obligor, by rescinding an agreement made by both with the creditor, which operates a discharge, can compel his co-obligor, who does not assent to the rescission, to remain bound with him. We think he cannot. The obligation once extinguished, can be revived only against those who assent to it. There is no evidence that James Roberts ever gave that assent.

This court have held, that a receipt given to one of two obligors *in solido*, purporting to be for his part, severs the solidarity of the obligation, and extinguishes it as to him who has paid. 4 Martin, N. S., 192. Such, we think, is the effect of the arrangements and contracts made by the plaintiff with the defendants; he must therefore look to Abner C. Roberts alone for his half of the notes sued on.

It has been strongly insisted on by the counsel for the defendants, that no parol testimony should have been admitted on the part of the plaintiff, to explain or contradict the release from Elliott to the defendants; and the article 2256 of the Code is relied on to sustain the objection. That article generally applies to those who appear to be parties or privies on the face of the act. A party may also be bound by what is contained in an act between third persons, if it be established that he had notice of it; yet as parol evidence is necessary and admissible to prove the notice, it follows, that by the

same kind of evidence, all that took place at the time of notice may be proved as part of the *res gestæ*. 1 Starkie, 57. 4 Martin, N. S., 13. 8 Id., 383, 405, 672. The law is very watchful of the stipulations of parties to a contract, in their application to third persons. The rule of *res inter alios acta* is to be regarded as a limitation and restraint upon the natural effect of collateral evidence, and must be co-extensive with the principle of its reception, and may be considered as founded on the same principles of natural reason and justice, which warrant the admission of indirect testimony. 1 Starkie, 59.

It having become necessary in this case, to show by parol evidence the connection and knowledge of the plaintiff with the notarial act between Elliott and the defendants, it was competent for him to show by the same testimony, upon what conditions and for what purposes he was to be bound, and to show a violation of the stipulations agreed on. Had Abner C. Roberts, in good faith, endorsed to plaintiff the notes of H. and W. Roberts, or had he permitted his name to be used, as James Roberts did, for the use and benefit of plaintiff, in suing on those notes, and allowed him to purchase the whole of the land mortgaged to secure those notes, there is no doubt, he (Abner) would have been discharged from the payment of the notes, as well as his co-defendant. But as he has acted otherwise, and the plaintiff has consented to it, they must abide by their own contracts, but cannot hold James Roberts bound, who did not assent, so far as we are informed, to Abner's becoming interested in the purchase of the land.

The judgments of the District Court are therefore reversed, and this court proceeding to give such judgment, as in their opinion should have been given in the court below, does further order and decree, that there be judgment in favor of James Roberts, discharging him from all liability on the notes sued on, without prejudice to his right to set up in payment or compensation against the last note mentioned in the petition, whatever shall remain of the sum of six thousand five hundred dollars, after extinguishing his (James Roberts') half of the two notes now sued on, with costs against the plaintiff in both courts : And it is further ordered and decreed, that the plaintiff, Warren M. Benton, do recover of and have judgment against the defendant, Abner C. Roberts, for the sum of four thou-

sand three hundred and eighty dollars, with interest at the rate of five per centum per annum on one half of said sum; from the first day of March, in the year 1838, until paid; and interest at the same rate on the other half of said sum, from the first day of March, in the year 1839, until paid, with costs in the district court; those of this appeal to be paid by the plaintiff and appellee. It is further ordered, that the judgment of nonsuit on the lost note be affirmed.

*Copley*, for the plaintiff.

*Browder* and *Selby*, for the defendants and appellants.