## SUCCESSION OF JOSEPH DAIGLE.

Where two parties purchased together certain landed property, each one undivided half, and furnished, for the price, their joint and several promissory notes secured by mortgage on the land purchased—*Held:* That these parties must be considered as purchasers and principal obligors each for one-half only of the property purchased, and as sureties for each other mutually as to the other half; and that, consequently, the re-purchase of one-half by the original vendor, from one of these purchasers, releases the remaining purchaser from his obligation as surety, as it renders impossible that subrogation to which he would be entitled under Article 2157 and 3030 C. C.

APPEAL from the District Court of the Parish of St. Landry, *Simon*, J. *John E. King* and *P. D. Hardy*, for the estate. *Theodule Daigle* and *P. D. Hardy*, for appellant. *Swayze & Moore*, for opponent, *E. H. Martin.*

DUFFEL, J. This is an opposition to the homologation of the account presented by the administrators.

1. The administrators are sought to be made liable for all the debts due the estate, according to the proces-verbal of the inventory.

The District Judge, on this branch of the case, ordered the administrators to account for one-half of the items 67, 70 and 75 of the inventory. The administrators ask that those items be rejected; and *Martin*, one of the opponents, contends that the administrators should be condemned to account for all the remaining claims of the estate.

The case has been presented in such a shape, as to render it impossible to find out the debts described in the inventory, which have been paid and accounted for by the administrators; but we are satisfied, from the evidence, that the following items cannot be realized, to-wit : items of the inventory Nos. 63, 66, 68, 69, 71, 72 73, 75, and 76 ; that item 64 must be reduced by ten dollars, and that the administrators must account, as decreed by the court *a qua*, for one-half of the items 67 and 70, say one-half of eighty-five dollars and twenty-five cents. With regard to all the other items of debts due the estate, as per the public inventory, including the amount apparently due on item 64, the administrators will be required to account (in their next account of administration to be rendered hereafter in due course of administration) for such of said items as are not included in the assets now ready for distribution.

2. The opposition of *Théodule Daigle*, for seventy dollars, was properly rejected, the evidence being insufficient to authorize a judgment in his favor.

3. The claim of *Théodule Daigle* for the supplies furnished to the deceased, his wife, children and slaves, to-wit, $254 20, was improperly rejected from the account; the testimony of *Zéphirin Daigle* and *Beauchamp* establishes the facts,

that those persons were maintained by *Théodule Daigle,* and that the amount charged was reasonable. We do not think that, under the circumstances of the case, a detailed account was necessary, or that the value of each item should have been proved.

4. We do not think that the District Judge erred in allowing the claim of *A. M. Perrauld,* Notary, say one hundred dollars. The Notary would, as he did, show the expenses incurred by him, and although such expenses do not properly fall under the charges and fees of Notaries, and are wholly independent, yet, as no surprise is alleged, we do not see the impropriety of including the same in the fees as Notary.

5. Having disposed of all the minor objections urged against the judgment of the District Court, we will now examine the last and most important opposition.

By public act dated 4th of January, 1853, *E. H. Martin* sold to *Jos. J. Beauchamp* and *Jos. Daigle,* the deceased, certain landed property for $6,100, payable in 1, 2, 3, and 4 years, with interest thereon at 8 per cent. from first January, 1854, till paid. The purchasers gave, to represent said sum, their four joint and several promissory notes, of $1,525 each, all secured by mortgage on the land conveyed, and other landed property and slaves belonging to the deceased, *Daigle.*

At a meeting of the creditors of *Joseph Daigle,* (his succession is administered as an insolvent one,) held on the 21st of March, 1855, *Martin,* the vendor, claiming to be a creditor for $6,100, voted and fixed the terms and conditions of the sale.

The undivided half only of this land was, on the 25th January, 1855, inventoried as belonging to the succession; and, at the public sale of said undivided half, made on the 26th April, 1855, the said *Martin* became the purchaser for $1255. Subsequently, on the 13th of May, 1856, *Martin,* by public act, acquired from *J. J. Beauchamp* his undivided half of said property for $2000, the price being deducted from the notes furnished by *Beauchamp & Daigle,* as above stated. The administrators, in their account, classed *Martin* as a mortgage créditor on the proceeds of the sale of the Bell Cheney Springs, for $3,050, with eight per cent. interest from 1st January, 1854, subject to a credit of $90.

The opponent seeks to have his claim acknowledged for $6,100, with eight per cent. interest from 1st January, 1854, till paid, subject to certain credits, with mortgage and privilege on the proceeds of all the property, lands and slaves, mortgaged as aforesaid on the 4th January, 1853. The District Judge decreed accordingly.

The creditor having voluntarily, by a private sale, acquired the undivided half interest of *Beauchamp* in the property, has placed himself and the property in such a position, as to render impossible the legal subrogotion which would take place, did the succession pay more than one-half of the debt, for the excess. C. C. 2157, § 3. Subrogation takes place of right, says this Article, "for the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it." "The obligation (C. C. 2099) contracted *in solido* towards the creditor, is of right divided among the debtors, who, among themselves, are liable each only for his part and portion." "The surety is discharged when, by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be operated in favor of the surety." C. C. 3030.

The late *Daigle* was in fact surety of *Beauchamp* for one-half of the debt; for, as between the debtors, they each acquired one-half of the property, and owed one-half of the price.

SUCCESSION OF
DAIGLE.

We may well say that the opponent has, by his acts, consented to the division of the debt, and that confusion took place to the extent of the liability of *Beauchamp* with regard to *Daigle*. C. C. 2096, 2215. For, if it be true that the whole property conveyed by *Martin* was subject to the payment of the entire debt, it cannot be denied that the undivided half reconveyed to *Martin* by *Beauchamp* is in his hands liable for one-half *at least* of the price, and that, for the purposes of this case, *Martin* being the creditor and owner of the thing pledged, confusion *pro tanto* takes place. *Baldwin* v. *Gray*, 4 N. S. 192 ; *Benton* v. *Robertson*, 1 Rob. 101.

It appears from the evidence, that *Martin* received from *Daigle* on account $183 22, on the 1st January, 1854 ; the other credits were paid by *Beauchamp*.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be amended in the following particulars : 1st, that the administrators now account and pay over one-half of the accounts due by *Singleton & King*, say the one-half of eighty-five dollars and twenty-five cents ; 2d, that the administrators be exonerated from rendering any account of the items of the inventory Nos. 63, 66, 68, 69, 71, 72, 73, 75, and 76 ; 3d, that a deduction of ten dollars be allowed on the account, item 64, due by *J. H. Overton* ; 4th, that the administrators be required, on the rendition of the next account of their administration, to account for such claims described in the inventory as are not above excepted, or which have not been included in the assets for distribution now in their hands ; 5th, that the claim of *Théodule Daigle*, described in the account of the administrators, and classed as a debt, be maintained,—said claim amounts to two hundred and fifty-four dollars and twenty cents ; 6th, that the claim of *E. H. Martin* remains, as in the account, for three thousand and fifty dollars, with interest at eight per cent. per annum from 1st January, 1854, till paid, subject to a credit of one hundred and eighty-three dollars and twenty-two cents, as of the date of 1st January, 1854, and that said sum be paid, by mortgage and privilege, out of the proceeds of the sale of the mortgaged property fully described in the judgment of the court *a qua*. And it is further decreed, that the judgment of the District Court, amended as above, be affirmed, the opponent, *E. H. Martin*, paying one-half of the costs of the appeal, and the succession paying the other half, as also the costs of the lower court.

---

## SAME CASE—ON AN APPLICATION FOR A RE-HEARING.

DUFFEL, J. The error in which the counsel of the opponent, *Martin*, has fallen, is, in viewing and treating *Daigle* simply as a purchaser and principal obligor. Can he in truth be considered in no other light?

The whole property was sold by *Martin* for $6,100. *Daigle* only acquired the undivided half, and became therefore bound, *as purchaser*, for one-half of the price ; yet he is responsible, by the terms of the contract, for the whole. And how can he be so bound ? Undoubtedly, for one-half as purchaser, and for one-half as surety *in solido* of the purchaser of the other half. C. C. 2102. This being the real and incontrovertible nature of the obligation, the administrators of the succession of *Daigle* rightly hold that the estate, as surety of the co-vendee, is discharged, inasmuch as the opponent, by his act, has rendered impossible the ubrogation resulting from the Article 2157, § 3, of the Civil Code. C. C. 3030.

It is evident, under the existing facts of this case, that the estate could only

be subrogated to the *personal* action of *Martin* against *Beauchamp*; but this subrogation is clearly inadequate, (and may, for ought that we know, be futile,) for the subrogation should embrace all the accessories to the principal obligation, that is to say, the mortgage and vendor's privilege. C. C. 3251, 2157; *Succession of Gatewood*, 12 R. 206.

Re-hearing refused.