Jackson vs. Tift.

No. 84.—JOHN JACKSON, plaintiff in error, vs. NELSON TIFT, defendant in error.

[1.] Where two defendants are sued, *ex contractu*, and one confesses judgment for both, the authority to do so need not appear in the record; nor can the judgment of the Court be collaterally attacked for this supposed defect, on a motion to distribute money.

[2.] Where the mortgagee purchases the equity of redemption, the whole estate is vested in him; and both the mortgage and the debt, upon which it is founded, are extinguished, unless the actual value of the mortgaged property be ascertained, by foreclosure and sale, or by express stipulation between the parties. *De minimis non curat lex.*

[3.] Distinction between Legislative and Judicial power defined and recognized. Even Courts of Law, in the distribution of money, act upon equitable principles.

Rule, to distribute money, in Dougherty Superior Court. Decision by Judge PERKINS, June Term, 1854.

The questions in this case, arose upon a motion to distribute a fund in the hands of the Sheriff. Objection was made to a *fi. fa.* in favor of John Jackson:

1st. Because the judgment on which it was founded, was, in a suit against two joint-contractors, and judgment was confessed by one for both of them, and the party confessing judgment, was not the one whose money was now being distributed by the Court.

2d. Because there was on the *fi. fa.* a levy on the tract of land, which levy has been dismissed.

3d. Because the money was brought into Court by another *fi. fa.*, after the litigation of a claim interposed to the property levied on.

4th. Because John Jackson has a mortgage on certain lands, to secure his debt. The mortgaged lots had been sold under other *fi. fas.*—whether older or younger than the mortgage, did not appear.

The Court determined that the *fi. fa.* in favor of Jackson should not take any part of the fund—upon which of the above stated grounds, does not appear from the bill of exceptions.

This decision is assigned as error.

STROZIER, for plaintiff in error.

LYON & CLARK, for defendant.

*By the Court.*—LUMPKIN, J., delivering the opinion.

[1.] Could the execution of Jackson be attacked, on account of the supposed defect in the confession of judgment? We think not. The authority upon which one of the defendants confessed for his co-defendant, need not appear in the record; and we are bound to presume in favor of the regularity of the judgment—that is, that it was made upon sufficient evidence.

[2.] Shall Jackson's debt be adjudged to be extinguished, under the facts of this case?

It is to be regretted that the record is not more full. Owing to the scantiness, as well as the uncertainty of the proofs, we may fail to measure out to both parties, that exact measure of justice which it is the desire of all Courts to administer.

It seems that Jackson sold to David Ham, Lot No. 24, on Broad Street, in the City of Albany, for $1432, and took a mortgage on the property, to secure the payment of the purchase money. The lot was divided into two parts, called Eastern and Western halves. Subsequent to the sale, by Jackson to Ham, these two parcels were levied on and sold, by executions in favor of one Robert Lundy, when Jackson became the purchaser, at the price of $76. The proof leaves it doubtful, whether the *fi. fas.* were older or younger than the mortgage. The presumption is, that they were younger. The record shows, that Jackson bought nothing but the mortgager's equity of redemption—the mortgage not having been foreclosed.

After, Jackson entered into an arrangement with David and Daniel Ham, respecting this property; and, without going into details, it may be sufficient to state, that by the consent of

all the parties, the Western half was sold for $600, while the Eastern was retained by Jackson, until the buildings on it were consumed by fire, when it was sold by Jackson for $300—the Hams having no agency or participation in the transaction.

Under these circumstances, what is the law of the case? When the mortgagee buys in the mortgaged property, under a junior lien, the debt is presumed to be extinguished. This presumption is founded on the idea, that the purchaser, knowing of the outstanding lien, is willing to satisfy that, and pay the amount of his bid over. This presumption may be rebutted, and the actual value of the property ascertained by sale, or fixed by the agreement of the parties in interest. In this instance, Jackson and Ham did stipulate that the Western half was worth $600; and it was sold for that. And Shorrell's judgment, the contesting creditor for the fund in Court, not having been obtained at that time, there was nothing to prevent Jackson and the Hams from contracting among themselves, as to what should be considered the value of this property.

But there was no agreement, express or implied, as to the Eastern half. In truth, Jackson seems to have acted upon the supposition, that by his purchase, at Sheriff's sale, under the sundry *fi. fas.*, he had acquired a complete title to this property. But feeling that it would not be right to appropriate to his own use, property worth $1432, at the small sum of $76, at which it was knocked off to him, he was willing to share it with the Hams, by applying the proceeds of the Western half to their use—retaining the Eastern to himself.

In the absence of all testimony, as to any contract between Jackson and the Hams, as it regards the Eastern half; and looking to the legal *status* of Jackson, as to this lot, namely: that he bid it in under a sale of the equity of redemption—he holding the mortgage on the premises—one half of his whole debt is, in contemplation of law, extinguished, and the remaining moiety should be credited with the $600, at the time it was received; and also with the rents, if any, which may have accrued on this Western half, from the time it was

bought by Jackson, up to the time when it was re-sold by him, by the consent of the Hams.

This judgment assumes the equality, in value, of the Eastern and Western halves of Lot No. 24. We are aware, that this is not exactly accurate, inasmuch as the equity of redemption in the one, sold for $40, and the other for $36. But the law does not care for little things; and we adopt the value, as fixed by the sale, as the basis of this decision—there being no other evidence in the record, as to the relative worth of these lots.

Our judgment, therefore is, that a calculation be made on the whole mortgage debt due John Jackson, up to the time when the Western half of Lot No. 24, was sold; that one-half thereof be considered extinguished—that being the estimation which the law puts upon the Eastern half, retained by the mortgage, and appropriated to his own use, in the absence of all proof as to its actual value. That the balance of the the mortgage debt be credited with the $600, for which the Western lot was sold, together with such rents, if any, as may have been received thereon, and that the execution stand open for the residue.

Counsel for the defendant in error waived, on the argument, insisting on any of the other grounds upon which the Court below may have been influenced, in ruling out the execution of Jackson.

[3.] A single remark, before dismissing this case. It may be supposed that we have overlooked or disregarded the distinction between Legislative and Judicial power. Not so, however. We fully comprehend, that it is the province of the former to make the law, and of the latter, to interpret and enforce it. Sitting upon a moneyed rule, we have only done what all the Courts in this State, have always claimed the right to do, namely: distribute the fund upon equitable principles. We have not assumed to prescribe any new rule; but attempted, in all modesty and meekness, to expound what we understand to be a familiar principle in Chancery, at least, if not at Common Law.