## Lewis *et al.* *vs.* Armstrong, administrator.*

An affidavit of illegality filed by John B. Lewis to an execution in favor of J. W. Armstrong, Sr., having been overruled, Lewis sued out a writ of error to the Supreme Court, giving his son, John F. Lewis, as his surety on the *supersedeas* bond. On the hearing in the Supreme Court, the judgment of the court below was affirmed. Afterwards, John B. Lewis filed another affidavit of illegality, which was dismissed. Prior to this dismissal, John B. Lewis filed his bill for injunction, etc., against the administrator of J. W. Armstrong, Sr., *et al.* to restrain the enforcement of the execution, and obtained an injunction on condition that he would give a bond, with security, for the eventual condemnation money and damages which might accrue by reason of the grant of the injunction. This bond he gave, with Pleasant A. Ray as surety. The injunction was finally dissolved; John B. Lewis excepted to the judgment, dissolving it; and the Supreme Court affirmed the judgment of the court below. The administrator of the plaintiff in *fi. fa* then sold all the real estate of the defendant in *fi. fa.*, the sum realized not being sufficient, by a large amount, to pay what was due thereon. After this sale, the administrator filed his bill against the heirs of Ray (who had died), to recover the penalty named in the bond. This suit was compromised before the hearing by the payment by one of the heirs of Ray of a sum much less than the amount claimed to be due. The administrator then filed his bill against the heirs at law of John F. Lewis, the security on the *supersedeas* bond, he having died and his administrators having been discharged after distributing his estate; and prayed for a decree against the heirs for the balance due on the *fi. fa.* So far as the record shows, J. B. Lewis was amply solvent when he filed the bill for injunction and when Ray signed his bond; and the signing of this second bond by Ray was without the knowledge or consent of John F. Lewis, the surety on the *supersedeas* bond:

*Held*, 1. When Ray signed the injunction bond he was at least bound jointly with John F. Lewis, the other surety, for the amount of the execution. When, therefore, his heirs at law were discharged, as stated, it was an injury to John F. If John F. had paid off the execution, he would have been entitled to all the liens or securities the creditor had; but the creditor having discharged Ray, Lewis could not have enforced the creditor's demand against Ray.

2. The discharge of the heirs at law of Lewis, the first surety, was a discharge only to the extent that they were damaged by the release of the property owned by Ray at the time of his death. The

*Bleckley, C. J., did not preside in this case, on account of indisposition.

Lewis *et al. vs.* Armstrong, administrator.

evidence upon this point was conflicting, but was not, as it should have been, considered by the court. Upon the next trial, the court should ascertain how much of Ray's property was subject and how much was released, and credit the amount released to the heirs of Lewis.

July 11, 1888.

Principal and surety. Bonds. Release. Before Judge Bower. Dougherty superior court. April term, 1887.

Reported in the decision.

D. H. Pope, for plaintiff in error.

J. Armstrong and D. A. Vason, *contra.*

Simmons, Justice.

It appears from the record in this case that, at the October term, 1868, of Dooly superior court, J. W. Armstrong, Sr., (since deceased) obtained a common law judgment against John B. Lewis, the grandfather of the plaintiffs in error, for the principal sum of $4,164.26. Execution was issued on this judgment, and levied, on the 22d of January, 1869, upon all the property of the defendant in *fi. fa.* To this levy an affidavit of illegality was filed by the defendant in *fi. fa.*, returnable to the April term, 1869, of Dooly superior court. The case came on to be tried at the October term, 1871, when the court overruled the affidavit of illegality on all the grounds taken. From this ruling of the court, the defendant in *fi. fa.*, John B. Lewis, sued out a writ of error to the January term, 1872, of the Supreme Court, executing a *supersedeas* bond dated October 17th, 1871, and giving his son, John F. Lewis, the father of the present plaintiffs in error, as his surety thereon. On the hearing in the Supreme Court, the judgment of the court below was affirmed. Afterwards, on the 25th of June, 1872, when the sheriff was proceeding

to execute the *fi. fa.*, John B. Lewis, the defendant in *fi. fa.*, filed another affidavit of illegality, alleging that the *fi. fa.* was proceeding illegally, because the judgment of the Supreme Court had not been returned and made the judgment of the superior court. At the September term, 1872, of the superior court, the affidavit was dismissed. Prior to the dismissal of this last affidavit of illegality, on the 29th of July, 1872, John B. Lewis, the defendant in *fi. fa.*, filed his bill for injunction, relief, etc., in Sumter superior court, against J. W. Armstrong, administrator, *et al.*, and obtained an injunction restraining further proceedings under the *fi. fa.* This injunction was granted on condition that John B. Lewis would give a bond with good security for the eventual condemnation money in the case, and all damages which might accrue by reason of the granting of the injunction. This bond was given by John B. Lewis, with Pleasant A. Ray as surety thereon. This injunction, after a protracted litigation, was finally dissolved on the 26th of November, 1881. John B. Lewis excepted to the judgment dissolving the injunction and brought the same to this court, and at the July term, 1882, this court affirmed the judgment of the court below. This judgment of affirmance was made the judgment of the superior court of Sumter county at the April term, 1883. J. W. Armstrong, as administrator of the plaintiff in *fi. fa.* proceeded to readvertise and sell all the real estate of the defendant in *fi. fa.*, on the first Tuesday in February, 1884, and realized therefrom the net sum of $3,249.25, leaving a balance due on the *fi. fa.* of $8,032.22, principal and interest to January 1st, 1886. After this sale of the property of John B. Lewis, the plaintiff in *fi. fa.* filed his bill in equity in Dooly superior court against the heirs at law of Pleasant A. Ray, the security on the injunction bond, to recover the penalty named in the bond, Ray having died prior to this time. This suit was made returnable to the March term, 1885, of that court, but was

compromised before the hearing by the payment of $1,000 by Thomas J. Ray, one of the defendants and heirs at law of Pleasant A. Ray.    After this compromise with Ray, the plaintiff in *fi. fa.* filed his bill against the heirs at law of John F. Lewis, the security on the *supersedeas* bond given on October 17th, 1871; John F. Lewis having died pending this litigation, and his administrators having been discharged after distributing the whole of his estate.    The bill alleged the foregoing facts, and prayed for a decree against the heirs at law of John F. Lewis, jointly and severally, for the balance due on the *fi. fa.*   The defendants in the court below demurred to the bill, on the ground that the making of the *remittitur* the judgment of the court, was a complete and perfect judgment on the bond sued on, both against the principal and the surety thereon, and more than ten years having elapsed and no execution having been issued thereon, it was dormant and could not be revived.    They answered the bill and admitted, in substance, that Pleasant Ray, the last surety, was first liable; if not, he was at least a co-surety, and his discharge operated as a discharge of the first surety; that when J. B. Lewis filed his bill, he was amply solvent and able to pay the debt, but that while the injunction was pending and while Ray, the discharged surety, was carrying J. B. Lewis, or standing for him, he, J. B. Lewis, became insolvent; and that Ray's estate was appraised at nearly $12,000.    He left no minor children.

By consent of the parties, the judge tried the cause without a jury; and after hearing the pleadings and evidence, the court found for the complainant $7,032.22, with interest from the 1st of January, 1886, and costs, and entered a decree accordingly; to which judgment the defendants below excepted.

1. We think the court erred in its finding.    The evidence shows that J. B. Lewis, the principal, had ample property with which to satisfy this judgment in 1872,

when he filed a bill for injunction, and when Ray signed the second bond as his surety for the eventual condemnation money and damages. So far as the record discloses, this was done without the knowledge or consent of John F. Lewis, the surety on the *supersedeas* bond. When Ray signed the injunction bond, he undertook to pay the principal and interest due on the execution, and all damages which might arise from the granting of the injunction. He was at least bound jointly with John F. Lewis, the other surety, for the amount of the execution. When, therefore, the plaintiff in execution discharged his heirs at law on the payment by them of $1,000, it was an injury to the other surety. If John F. Lewis, the first surety, had paid off this execution, he would have been entitled to all the liens or securities that the creditor had. The creditor having discharged Ray, Lewis, the first surety, could not have enforced the creditor's demand against Ray.

In the notes of 1 White & Tudor's Leading Cases in Equity, Part I, quoting from Hartwell *vs.* Smith, 15 Ohio, 200, it is said: " It is well-settled that if the interposition of the second surety is for the benefit of the principal alone, without the sanction or assent of the first surety, who may be prejudiced thereby,—as when the effect of the second bond is to prevent the enforcement of present payment from the principal, and thus to prolong the responsibility of the first surety,—in such a case the equity of the first surety is superior, and he is entitled to be subrogated to the rights of the creditor as against the second. . . . . But the rule is otherwise where the surety in the second bond becomes bound for a purpose in which both the principal and the prior surety concur, in which they both have an interest, and where the assent of the prior surety is expressly given, or is clearly to be inferred from the circumstances of the case. In such a case, the last surety has a right to look for his indemnity, not only to his principal, but to such fixed securities as have been

given to the creditor when his engagement was entered into, and on the faith of which he may be presumed to have incurred his obligations." Howe *vs.* Frazer, 2 Rob. La. 424, cited. They say further: "It is settled law that if a creditor by a valid contract with his principal debtor, without the consent of the surety, extend the time of payment, by thus tying up his own hands and suspending his right of action on the original contract against the principal, he discharges the surety. But if the contract for extending the time be made with the assent of the surety, his liability remains unaffected. Upon a principle quite analogous to this, do the conflicting equities of prior and subsequent sureties in cases like the present depend. If without the consent of the first surety the creditor is arrested in the collection of his debt from the principal by the interposition of a second surety, the former will be allowed, for his indemnity, to be subrogated to the rights of the creditor against the latter."

We think, therefore, that when the plaintiff in execution discharged the heirs of Ray, the last surety, it amounted to a discharge of the heirs at law of Lewis, the first surety.

2. The question will arise, however, whether this discharge was complete, or only *pro tanto.* We are inclined to think that it was not a complete discharge, but only a discharge of the Lewises to the extent they were damaged by the release of the property owned by Ray at the time of his death. The evidence before the court was conflicting upon this point, but was not considered by the court, because he took a different view from that which we take of the case. The rule seems to be: "If the creditor has a surety for the debt, and also has a lien upon the property of the principal for the security of the same debt, and he relinquishes such lien, and by his act such lien is rendered unavailable for the payment of the debt, the surety is, to the extent of the value of the lien thus lost, discharged from liability. . . . Upon obtaining such a

lien, the creditor becomes a trustee for all parties concerned, and is bound to apply the property for the purposes of the trust. When such lien is acquired after the property becomes bound, and even without his knowledge, the rule is the same. . . . Where a creditor has released a security to the benefit of which the surety is entitled, it has been held that the burden of proving the value of the thing lost is upon the creditor. And where a judgment against the principal was discharged, and there was no proof as to its value, it was presumed to be of face value. The court said : 'It is right to apply the general rule of damages, that when the amount is made incapable of estimation by the act of the wrong-doer, he must be made responsible for the value it may by reasonable possibility turn out to be of.' " Brandt on Suret. §370.

We think, therefore, that the court erred in finding the whole amount due upon this execution, principal and interest, against the heirs at law of Lewis, the first surety. We think that, Ray being primarily liable, the court should inquire, or should ascertain upon the next trial, the amount of Ray's property that was subject to this judgment and execution, and determine how much thereof was released by the plaintiff, and credit whatever amount was released to the heirs of Lewis.

Judgment reversed.