Marshall *vs.* Dixon.

---

MARSHALL *vs.* DIXON.

1. A creditor who by the same contract has personal security and a mortgage upon personal property, having after maturity of the debt received the mortgaged property by contract with the princi-pal debtor, in part payment, at more than its full value at the time he received it, may proceed against the surety as well as the principal for the balance of the debt.　His inability to subrogate the surety to his rights as mortgagee against the property, is no injury to the surety, because the latter has received the full benefit of the property by a credit on the contract.
2. A stipulation between the creditor and the principal debtor at the time the property was received in part payment, to the effect that the latter might redeem the same within a given time by the pay-ment of the whole debt, is no contract for indulgence upon the debt, but a mere agreement for the privilege of redemption, and such stipulation is therefore no discharge of the surety.

March 18, 1889.

Debtor and creditor.　Principal and surety.　Subro-gation.　Contracts.　Mortgages.　Merger.　Before Judge BOWER.　Decatur superior court.　May term, 1888.

Reported in the decision.

Marshall *vs.* Dixon.

DONALSON & HAWES, for plaintiff in error.

No appearance *contra.*

BLECKLEY, Chief Justice,

Dixon sold a horse to Murphy for $100. Murphy and Marshall gave a joint note for the price, which note contained also a mortgage upon the horse. The debt became due in October, and on the second of December thereafter, a credit was entered upon the note for $60, which included $50, the agreed price of the horse on his repurchase by Dixon from Murphy, together with $10 otherwise paid. In the contract of repurchase, Dixon agreed that Murphy might redeem the horse by paying the whole debt, provided he paid it by the first of January thereafter. He failed to comply with these terms, and Dixon afterwards sold the horse to another person for $100, payable in the succeeding fall. He then brought suit upon the note against both makers; and Marshall, the surety, set up his discharge, first, on the ground that, the mortgage being extinguished, he was no longer bound; and secondly, on the ground that the arrangement between Dixon and Murphy amounted to an extension of time or a contract for indulgence upon the note. At the trial, Dixon testified that when he re-purchased the horse, it had been badly treated, and had so run down in value that $50 was more than it was then worth. There was no evidence tending to nega-tive or in any way modify this testimony. It was con-ceded that Marshall did not give his consent to the horse being repurchased at less than the amount of the debt, nor to the sale of the horse subsequently made by Dixon.

1. No doubt the mortgage was extinguished by mer-ger. *Jackson vs. Tift,* 15 *Ga.* 557; *Knowles vs. Lawton,*

18 *Ga.* 476.   It follows, necessarily, that the right of subrogation given to the surety by section 2176 of the code cannot be enjoyed.   This, however, could not operate to the injury of the surety, because he had the full benefit, by a credit upon the note, of any advantage that he could have derived from subrogation.   Not only was the expense of foreclosing the mortgage saved to him, but he got credit for more than the value of the horse.   It might be thought, according to some authorities, that the mere loss of the right of subrogation would operate to discharge the surety, irrespective of whether damage resulted or not.   Hereford *vs.* Chase, 1 Rob. (La.) 212 ; Succession of Daigle, 15 La. Ann. 594. It is, perhaps, to one of these cases that Judge SPEER refers in *Echols vs. Head*, 68 *Ga.* 152.   But the true, rule is, that the surrender or extinction of securities operates a discharge only *pro tanto*—that is, to the extent of their value.   Barrow *vs.* Shields, 13 La. Ann. 57 ; Provan *vs.* Percy, 11 La. Ann. 179 ; Neff's Appeal, 9 Watts & S. 36; Beverley *vs.* Rice, 20 Penn. St. 297; Brandt Sur. §370 ; *Lewis vs. Armstrong*, 80 *Ga.* 402.

The right of subrogation is primarily a doctrine of equity, and when the surety has obtained otherwise all that this right could possibly secure to him, he is not injured, and therefore is not discharged.

2. With regard to the contract for redeeming the horse, there can be no question that it did not constitute any agreement, express or implied, to grant indulgence on the note.   The creditor did not tie his own hands.   Had he brought suit upon the note immediately after entering into this contract, the contract would have been no defence to it.   Had payment of the balance of the note been enforced by suit before the time expired for redemption, the principal debtor would have had the right still to redeem by paying the $50 which

had been credited upon the note as the price of the horse on receiving him back, provided this had been done within the time fixed by the contract. Had the surety come forward and paid off the balance of the note, that payment would have operated *pro tanto* in behalf of the principal in respect to the contract to redeem, and the surety could have proceeded forthwith to compel his principal to refund the payment so made. The contract for redemption would have been as well satisfied by a compulsory payment as a voluntary payment; as well satisfied by a payment by the surety as by the principal; so that contract was not in the way of the collection of the balance of the note, whether by the creditor or by the surety. We think there was no error in allowing a recovery against both principal and surety for the unpaid balance, and that the court below did right in overruling the *certiorari* sued out by the surety.

Judgment affirmed.