### 633.  CLOUD *v.* SCARBOROUGH.

1. The acts of a creditor which, under the provisions of the Civil Code, § 2972, will effect a discharge of a surety are of three distinct and independent classes. Each class is of a different nature, and neither class is necessarily related to the other.
2. It is only when the discharge of a surety is claimed upon the ground that the act of the creditor has injured him that proof of loss on the part of the surety is required (and in some such cases it might not be necessary). Proof of a loss by the surety is not required where his discharge is dependent upon an act of the creditor which has increased his risk, nor where it is claimed that the act of the creditor has operated to discharge the surety by exposing him to greater liability.
3. Failure to record a contemporaneous mortgage given to secure an indebtedness evidenced by a promissory note, for the payment of which one is surety, discharges the surety. Such failure of the principal to perform a duty to the surety is "an act of omission" which increases the surety's risk, and no actual loss by the surety need be shown.

Appeal, from Sumter superior court—Judge Littlejohn.  June 4, 1907.

Submitted November 11,—Decided November 14, 1907.·

*Ellis, Webb & Ellis,* for plaintiff in error.

*Blalock & Cobb,* contra.

RUSSELL, J.  W. H. Scarborough sued Miss Emma Cloud in a justice's court, on a promissory note.  The case was appealed to the superior court of Sumter county, and came in for a trial in its regular order June 4, 1907.  The defendant filed .a plea setting up that T. B. Powell was the true maker of the note sued upon, and that she signed the same as surety, and that both of the notes sued upon were secured by mortgages on personal property, and that said mortgages were not recorded by the plaintiff. No point was made as to the sufficiency of the pleadings of either the plaintiff or the defendant.  The following facts were agreed upon by the counsel:  that T. B. Powell, the principal maker of the notes, was dead when the plaintiff's suit was instituted against the defendant; that the defendant signed the notes as surety and received no part of the consideration of the notes; that each of the notes sued upon was secured by mortgage on personal property, and that the mortgage had never been recorded.  It was further agreed that the cause should be submitted for decision by the presiding judge without a jury, and that the only question involved was whether the failure of the plaintiff to record the mortgages was such an act, of the creditor as would discharge the defendant.  The judge of the superior court rendered judgment in favor of the plaintiff against the defendant, for the amount of the notes, together with interest, and this judgment is assigned as error.

The question presented by this record is whether the surety on a promissory note, secured by mortgage, is released and discharged by failure to record the mortgage.  And furthermore, is the surety released by failure to record the mortgage, irrespective of any proof of loss on his part?  To both questions we answer unqualifiedly, yes.  Whatever may be the rulings upon these questions in other jurisdictions, there can be no doubt as to the decision in this State.  Our code section upon this subject is of judicial origin, being merely the adoption and incorporation into the code, by legislative approval, of the principles previously asserted in *Brown* v. *Ex'rs of Riggins,* 3 *Ga.* 112, and *Jones* v. *Whitehead,* 4 *Ga.* 401. This section of the Civil Code (§2972) declares, that "Any act

of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, will discharge him; a mere failure by the creditor to sue as soon as the law allows, or negligence to prosecute with vigor his legal remedies, unless for a consideration, will not release the surety." It will be noted, from the language employed, that the act which will discharge the surety need not include and partake of the same nature of detriment to the surety. It need not be shown that the act of the creditor, relied upon as a discharge, not only injured the surety, but also increased his risk and exposed him to greater liability. On the contrary, the acts which may effect the discharge of the surety are divided into three distinct classes, not necessarily related to or affecting each other; and proof of any act coming within either class—either an act which injures the surety or an act of the creditor which increases his risk, or an act which exposes the surety to a greater liability—will discharge the surety. It is only when the act complained of falls in the first class—when it is claimed that the surety has been *injured*—that proof of loss is necessary. Loss or proof of loss is not essential, to discharge a surety, either in a case where the act of the creditor increases the risk of the surety, or where he seeks to be released because the act of the creditor has exposed him to greater liability.

The distinction between the first ground of discharge and the other two is apparent, because the injury naturally refers to something in the past from which the injury resulted. This distinction has been recognized by the numerous decisions in which it has been held that proof of actual loss was not necessary to be shown in order to effect that discharge of the surety. In each of these cases the act was one by which the risk of the surety was increased or he was exposed to greater liability. The identity or distinction between the class of acts which increase the surety's risk and those which expose him to greater liability is not so marked nor as readily apparent. But it is possible to conceive of many cases in which the independent identity of each may be recognized. The retaining of usury by the creditor without the knowledge or consent of the surety, by which the security of the homestead, afforded by the principal debtor, is forfeited, falls within the class of acts by a creditor by which the surety is released because his

risk is increased. The release of a surety by an act of the creditor falls in the class of acts by which the surety is· exposed to greater liability, because the release of one surety would deprive the other surety of his right to have a contribution in the event the principal failed to discharge the obligation. As it was admitted in the agreed statement of facts that the plaintiff in error was only a surety, and that the mortgage security taken contemporaneously with the notes had not been recorded, we think the court erred in rendering judgment against the defendant. She was released by the failure of the creditor to record the mortgage in a reasonable time, whereby her risk was increased. The mortgage was pro tanto a security in her behalf, and the duty devolved on the creditor not only to see that the security was not destroyed, but also to have a care that it was not endangered.

The decision of this case is necessarily controlled by the judgment of the Supreme Court in *Toomer* v. *Dickerson, 37 Ga.* 428. The *Toomer* case is squarely in point on the only issue involved in this case, as it was the only one in that. Chief Justice Warner, delivering the opinion of the court, says (p. 438) : "Is this failure to record his mortgage, in obedience to the requirement of the law, such an act of omission on the part of the creditor as increased the risk of the security, or exposed him to greater liability? The language of the code is, 'any act of the creditor;' which may as well be an act of omission as any other act, whereby the risk of the security is increased, or exposes him to greater liability. An act of omission on the part of the creditor, when the law requires him to act, may be quite as potent for mischief to the security as an act of commission. The question to be answered is, did this act of omission on the part of the creditor, in not doing what the law required him to do, increase the risk of the security, or expose him to greater liability? When we take into consideration the fact, that if the security had been compelled to pay this debt to the creditor, he would have been entitled to the benefit of the mortgage lien upon his principal's property, in short, to have been subrogated to all the creditor's rights and securities, held by him against the principal debtor, we shall then readily discover to what extent his risk has been increased, and to what extent he has been exposed to greater liability by the failure of the creditor to record his mortgage as required by law. By the

creditor's act of omission to record his mortgage, his lien upon the principal debtor's property (to which his security would have been entitled, to reimburse himself in the event of the payment of the debt by him) will be postponed to all other liens, created or obtained against that property, or purchases made from his principal debtor prior to the actual record of the mortgage. But it was insisted, in the argument of this case, that the security had suffered no injury from the failure of the creditor to record the mortgage. Upon that point the record is silent. The security has shown that by the act of the creditor his risk has been increased, and that he has been exposed to greater liability; which is sufficient, prima facie at least, to discharge him. The plaintiff has not attempted to show by any evidence in the record that he was not in fact injured in consequence of his increased risk and exposure to greater liability. We know nothing upon that point in the case, except what the record discloses. The record discloses the fact that in consequence of the failure to record the mortgage, as required by law, the risk of the security was increased, and that he has been exposed to greater liability; at least such is necessarily the legal effect, from the facts proved in the record. . . It is not unreasonable to suppose that he may have been mainly induced to become the security for the payment of the debt in view of the fact that the mortgage had been executed by his principal to the plaintiff to secure its payment. If it was now an open question in this court, which it is not, in the opinion of the majority of the court, we should be extremely unwilling to establish the rule that a creditor holding a mortgage upon the property of his principal debtor to secure its payment should be permitted to omit or neglect to perform his duty as required by law, whereby, in consequence of such omission or negligence of duty required by law, the risk of the security is increased or exposed to greater liability, and yet, that such creditor should be allowed, under such circumstances, to hold the security liable for the payment of the debt. For the creditor to remain passive, when there is no law requiring him to act, is one thing; but to remain passive when the law enjoins upon him a duty to be performed, in regard to matters in which the security for the payment of his debt has an interest, is another and different thing. The creditor should not be allowed, simply because he has ample personal se-

·curity for the payment of his debt, to remain passive and negli-.gent in the performance of his duties enjoined by law, so as to in-·crease the risk of such security, or to expose him to greater lia-.bility."

Counsel for the defendant in error cites *Marshall* v. *Dixon,* 82 *Ga.* 435, as authority to sustain the decision of the court below, but nothing more is decided therein than that a surety is not relieved from payment of the balance of a note, secured by mort-.gage, remaining unpaid after the creditor has applied the whole of the mortgaged property (at more than its market value) on the note. The reason for this decision is stated to be that the surety .got every advantage he could derive from subrogation, and that "not only was the expense of foreclosing the mortgage saved to him, but he got credit for more than the value of the horse." And the court then cites, in support of the proposition that the ex-tinction of securities (instead of the right of subrogation) "oper-ates a discharge only pro tanto—that is, to the extent of their value." Barrow *v.* Shields, 13 La. Ann. 57; Provan *v.* Percy, 11 La. Ann. 179; Neff's Appeal, 9 Watts & S. 36; Bev-·erley *v.* Rice, 20 Penn. St. 297; Brandt, Sur. §370; *Lewis* v. *Armstrong,* 80 *Ga.* 402. The rulings in *Griffeth* v. *Moss,* ·94 *Ga.* 199, and *Montgomery* v. *Martin,* 94 *Ga.* 219 (though both are cases where mortgages had been given by the principal ·debtor to secure the debt for which the surety was liable), do not touch the question now presented to us. In the first the only point ·decided was that sureties were discharged pro tanto, to the extent ·of the value of the property mortgaged, in a case where the cred-itor instructed the sheriff not to levy upon the mortgaged prop-erty and it was afterwards, by the mortgagor, placed beyond the reach of a levy. In the second case it was held that where a mort-.gagee, without the consent of the surety, applies the mortgaged property, or its proceeds, to a debt due him other than that for the payment of which the surety is bound, the surety is likewise re-leased, to the amount thus misapplied by the creditor. If the mort-gages involved in these cases were not recorded, the point was not raised. The decision in the case last cited was clearly right, both on principle and authority. The surety could not claim that his risk had been in any wise increased, when the evidence showed, without any contradiction, that the effect of the creditor's

acceptance of the mortgaged property in partial payment of the debt had been to *diminish* the surety's liability, because the creditor allowed considerably more for the property than its market value. The decision in *Gay* v. *Mott*, 43 *Ga.* 253, has no application to the issue in the present case, and the rulings in *Palmer* v. *Melson*, 76 *Ga.* 803, and in *Janes* v. *Penny*, 76 *Ga.* 796, cited by counsel for defendant in error, are not in point.

Neither the rule that exposure to greater liability will discharge a surety, nor the rule that the surety has made out a prima facie case and has shifted the burden upon the creditor by showing an act of the creditor which exposed the surety to greater liability, is in conflict with the rule in *Ward* v. *McLamb*, 118 *Ga.* 811; *Montgomery* v. *Martin*, 94 *Ga.* 219; *Marshall* v. *Dixon*, 82 *Ga.* 435; and *Lewis* v. *Armstrong*, 80 *Ga.* 402 (2) ; for the rule laid down in these four decisions, to the effect that the surety is discharged only pro tanto, is a holding to the effect that where there has been exposure to greater risk, the surety has been discharged. To illustrate this contention: The debt might be for $200, and the value of the personal property covered by mortgage, to secure the payment of that debt, $100; it necessarily follows that no act of the creditor that would cause the actual loss of this mortgaged property of the value of $100 or expose it to loss could expose the surety to liability as to the whole of the $200, or as to more than the $100, the payment of which the actual value of the property secures, and which $100 would be extinguished by subjecting the mortgaged property to the payment of the debt. As a matter of fact, in such a case there is no security as to the other $100; and hence no act of the creditor, exposing the mortgaged property to loss by failure to have the mortgage recorded, or otherwise, can operate to increase the risk of the surety, except pro tanto. *Judgment reversed.*