Bell, J.
The application for requisition made to the Governor of Wisconsin over the oath of the District Attorney of Milwaukee County recites in part as follows:
“* * * William Lee Harris, who stands charged in the District Court of Milwaukee County, with the crime of abandonment and nonsupport of his minor child aged one month; that said William Lee Harris is alleged to have committed an act or acts in the state of Ohio resulting in a crime in the county of Milwaukee, on the 2nd day of July, 1956 * * *.
“That said defendant (* * *) is out of the jurisdiction of the state of Wisconsin and, as I am informed, and believe, is now located in Cleveland, the county of Cuyahoga, state of Ohio, and that in my opinion the ends of public justice require and I am content that the defendant should be brought to the state of Wisconsin for trial, at public expense * * *. [The omission of the words between the above parentheses was pur *153 suant to the instruction, “if not a fugitive eliminate this.” They were crossed off the printed form and were “has fled from the jurisdiction of the state of Wisconsin, and is now a fugitive from justice.”]
i i # # *
“That said charge against said accused (is) the offense of abandonment and nonsupport, and that a trial had in the state of Wisconsin shall be under the provisions of Section 52.05 of the Wisconsin Statutes of 1955.
“That the said offense and the punishment thereof (are) defined in said section aforesaid, and said section (is) (are) as follows, to wit:
“Section 52.05. ‘Any person who, without just cause, deserts or wilfully neglects or refuses to provide for the support and maintenance of his wife or child under 18 (legitimate or illegitimate) in destitute or necessitous circumstances shall be fined not more than $500, or imprisoned not more than 2 years, or both. The parent of any illegitimate child who has made provision for the support of such child by giving bond, or by settlement with the proper officers in accordance with ss. 52.21 to 52.45 shall not be subject to this section.’ ”
Attached to and made a part of the District Attorney’s application for a requisition is the affidavit of one Hattie Walders, which affidavit, omitting the caption and jurat, reads as follows:
“Hattie Walders, being first duly sworn on oath, complains to the District Court of the county of Milwaukee that William Lee Harris on the 2nd day of July, in the year one thousand nine hundred and fifty-six, at the county of Milwaukee, being-then and there the father of her minor child named Spring Ann, of the age of one month, and he, the said defendant, being then and there of sufficient ability to provide for said minor child, did then and there without just cause desert, wilfully neglect and refuse to provide for the support and maintenance of said minor child in destitute and necessitous circumstances and did ever since neglect and refuse to provide for her, contrary to Section 52.05 of the statutes and against the peace and dignity of the state of Wisconsin, and prays that the said William Lee Harris may be arrested and dealt with according to law.
“That said William Lee Harris on the 2nd day of Julv, A. *154 D. 1956, was iu the state of Ohio, and committed such act in said latter state intentionally resulting in such crime in the state of Wisconsin.”
Section 2963.02, Revised Code, a part of the Uniform Extradition Act adopted by the General Assembly of Ohio on May 21, 1937 (117 Ohio Laws, 588), reads as follows:
“Subject to Sections 2963.01 to 2963.27, inclusive, of the Revised Code, the Constitution of the United States and ail acts of Congress enacted in pursuance thereof, the Governor shall have arrested and delivered to the executive authority of any other state of the United States, any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state. ’ ’
It is well established that the Governor of Ohio is not required to honor a -requisition for extradition when the accused is charged in the demanding state on a civil cause rather than a criminal one. Work, Agent, v. Corrington, 34 Ohio St., 64, 32 Am. Rep., 345. That case, however, equally settled the proposition that if the case comes within the statutes no discretion is vested in the Governor of the state of asylum and it is his imperative duty to issue a warrant of extradition.
Judge Okey, who wrote the opinion in the Work case, supra, said in the opinion in Wilcox v. Nolze, 34 Ohio St., 520, at page 523:
“The Governor of a state, in issuing his warrant of extradition of a fugitive from justice, acts in an executive, and not in a judicial capacity. He is not permitted to try the question whether the accused is guilty or not guilty; he is not to regard a departure from the prescribed forms for making the application, or as to the manner of charging the crime, in any matter not of the substance; and he is not to be controlled by the question whether the offense is or is not a crime in his own state, the inquiry being whether the act is punishable as a crime in the demanding state. Nor have the courts larger powers, in any of these respects, than the Governor.” (Emphasis added.)
What, then, are the duties of the Governor in issuing an executive warrant and of the court in which a discharge by habeas corpus is sought by one whose extradition is demanded?
In each instance, the Governor and the court shall inquire *155 and determine (1) whether an offense is charged under the laws of the state demanding extradition, (2) whether the identity of the party charged is established, (3) whether the party charged is a fugitive from justice (except in cases arising under Section 2963.06, Revised Code, hereinafter discussed), and (4) whether the extradition is not for the purpose of enforcing any civil liability.
No question has been raised in this proceeding concerning the identity of the accused. And, if the answer to the first question is in the affirmative, the obvious answer to the fourth is in the negative.
It is argued by appellant that he can not be charged with a violation of Section 52.05 of the Wisconsin Code because there has been no determination in Wisconsin of his paternity of the child involved. He cites in support of such argument the case of State v. Beilke, 146 Wis., 515, 131 N. W., 891.
The statute in effect at the time of the Beilke decision (1911) was Section 4587c, Wisconsin Statutes, which read in part as follows:
“Any parent who shall wilfully abandon his or her minor child or children * * * and any person after having been determined by the judgment of any court of record having jurisdiction thereof, to be the father of any bastard child, who shall unreasonably refuse or neglect to provide for said child * * * shall be punished * * *."
The defendant in the Beilke case had been adjudged to be the father of a bastard child. He argued that the prosecution for alleged failure to provide was being used as a means to enforce a judgment for support. The court rejected such argument and, in holding that the statute was a valid exercise of legislative authority, added that the statute made such adjudication a condition precedent to prosecution for refusal or neglect to provide for the child.
The difference between the Wisconsin statute now in effect and that at the time of the Beilke-case is obvious. There is no such specific requirement of an adjudication of paternity in the present statute. And, since the Beilke case, the Attorney General of Wisconsin has on at least two occasions ruled that conviction in a bastardy proceeding is not a condition precedent to *156 prosecution for abandonment of an illegitimate child. 4 Opinions of Attorney General (Wis., 1915), 140; 20 Opinions of Attorney General (Wis., 1931), 1088.
We conclude, therefore, that had the alleged abandonment occurred in the state of Wisconsin such abandonment would have been an offense under the laws of that state.
We are still confronted, however, with the question of whether the offense as charged under the laws of the state of Wisconsin can be the basis of an extradition under the laws of Ohio.
Prior to the adoption of the Uniform Extradition Act, it was possible to extradite only a criminal who could be said to be a “fugitive,” i. e., one who had been physically present in the state in which he committed a crime and had fled therefrom. To remedy this situation, several of the states enacted what is generally known as Section 6 of the Uniform Extradition Act. The Ohio enactment is Section 2963.06, Revised Code. By specific provision of Section 2963.11, Revised Code, the fugitive section of the act does not apply to cases arising under Section 2963.06, Revised Code.
Section 2963.06, Revised Code, reads as follows:
“The Governor may surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in Section 2963.03 of the Revised Code with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and Sections 2963.01 to 2963.27, inclusive, of the Revised Code, apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom.”
The constitutionality of the provisions of this section was unanimously upheld by this court in English v. Matowitz, Chief of Police, 148 Ohio St., 39, 72 N. E. (2d), 898, and by the courts of many other states. See, for example, Ex Parte Bledsoe, 93 Old a. Cr., 302, 227 P. (2d), 680; Ex Parte Dalton, 56 N. M.. 407, 244 P. (2d), 790; McLarnan v. Hasson, 243 Iowa, 379, 49 N. W. 2d). 887.
Both the affidavit of the complaining witness in Wisconsin *157 and the application for requisition made by the District Attorney state that the act of appellant was committed in Ohio and intentionally resulted in a crime in Wisconsin, thus bringing the case within the permissive provisions of Section 2963.06, Revised Code. Compare Ennist v. Baden, Sheriff, 158 Fla., 141, 28 So. (2d), 160, where, although this section of the Uniform Extradition Act was held to be constitutional, extradition to the state of New York was denied by the state of Florida on the ground that the extradition papers were defective in that the indictment did not charge the defendant with committing an act in Florida intentionally resulting in a crime in New York.
Since we have concluded that the charge of failure to provide for the child in Wisconsin effectively charges a crime in that state, if the appellant committed an act in Ohio which resulted in that crime in Wisconsin, he may be extradited therefor.
Is neglect or refusal by one living in Ohio to provide for a child residing in Wisconsin the “committing” of “an act in this state”? In other words, does one by failing to act in a particular regard commit an act?
Little help in answering this question can be found in our prior decisions relating to extradition. In English v. Matowits, supra, the defendant actively engaged in a conspiracy in Ohio and furnished others with a gun with which a robbery was committed in Pennsylvania. Similarly, in Culbertson v. Sweeney, Sheriff, 70 Ohio App., 344, 44 N. E. (2d), 807 (appeal as of right dismissed, 140 Ohio St., 426, 45 N. E. [2d], 118), the defendant was charged with being an accomplice with one who was in the state of New York and who actually committed an abortion. Although the former was not in that state at the time the crime was committed, he “acted” by making financial arrangements for an abortion in New York and by persuading the victim to submit to an operation.
Nor do we believe the question is settled by our decisions in the negligence field, where one has been held immune from liability for a failure to act in a situation where he is under no duty to act. Burdick v. Cheadle, 26 Ohio St., 393, 20 Am. Rep., 767; Pittsburgh, Port Wayne & Chicago Ry. Co. v. Bingham, Admx., 29 Ohio St., 364, 23 Am. Rep., 751; Railroad Co. v. Har *158 vey, 77 Ohio St., 235, 83 N. E., 66, 122 Am. St. Rep., 503, 19 L. R. A. (N. S.), 1136; Hannan, Admr., v. Ehrlich, 102 Ohio St., 176, 131 N. E., 504; Cooper v. Roose, 151 Ohio St., 316, 85 N. E. (2d), 545.
The distinction between those cases and the one under consideration was pointed up by Judge Taft in the Cooper case, supra, when he said:
“This necessarily follows because a failure to act cannot be actionable negligence if there is no legal duty to act.” (Emphasis added.)
The duty to support one’s minor children exists universally, and the mere failure to do so constitutes a crime.
The question was presented to the Court of Appeals of Maryland in the case of Lincoln v. State, 199 Md., 194, 85 A. (2d), 765, where the court said:
“Appellant contends that he is not charged with ‘committing an act’ in this state which would authorize extradition under Section 18, supra [a section identical to Section 2963.06, Revised Code], but only with failure to act.”
The Maryland court did not find it necessary to decide that question, however, because at the time of the alleged abandonment the accused had actually been in the demanding state and was found properly extradited as a “fugitive.”
In commenting on the question thus raised by the accused in the Lincoln case, Frisbee J. Fuller, writing in 37 Cornell Law Quarterly, 780, at page 785, concluded:
“If the courts were for this reason not to apply Section 6 to abandonment and nonsupport cases, the section would • be deprived of much of its effectiveness for it can only be utilized for a small number of crimes — -false pretenses, crimes consummated by mail, conspiracy, accessories to all crimes, and abandonment and nonsupport.”
The “committing of an act” connotes some exercise of volition, some effectuation of purpose, some wilfulness. A wilful wrongful act is defined in 45 Words and Phrases (Perm. Ed.), 246, as one done by a person of his own mind and with the purpose of doing another some wrong, either by omission or commission. And when the law requires one to act, e. g., to support his children, his wilful failure to do so is as much an *159 act, albeit an act of omission, as if he literally took food from their mouths or physically carried them from shelter and left them abandoned and unsheltered.
Both the language and the reasoning of the court in Cloud v. Scarborough, 3 Ga. App., 7, 59 S. E., 202, are appropriate here. The Court of Appeals of Georgia had before it a statute which provided that “ any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, will discharge him.” The court was faced with the question of whether a surety on a promissory note secured by mortgage was released and discharged by failure to record the mortgage. The court quoted with approval the following from Toomer v. Dickerson, 37 Ga., 428:
‘ ‘ Is this failure to record his mortgage, in obedience to the requirement of the law, such an act of omission on the part of the creditor, as increased the risk of the security, or exposed him to greater liability 1 The language of the Code is, ‘any act of the creditor,’ which may as well be an act of omission, as any other act * * *. An act of omission on the part of the creditor, when the law requires him to act, may be quite as potent for mischief to the security, as an act of commission.”
In our opinion, a person in Ohio who intentionally does nothing to support his child in another state, when under the laws of such other state he is required to do so, thereby ‘‘commits an act” in Ohio which intentionally results in a crime in such other state, and he may be extradited therefor under Section 2963.06, Revised Code.
Of course, the complaining witness in this case might have elected to proceed under the Uniform Reciprocal Enforcement of Support Act (Section 52.10, Wisconsin Statutes), the provisions of which act are also in effect in Ohio (Section 3115.01 et seq., Revised Code). Had she done so, extradition would have been facilitated under the provisions of Section 3115.04, Revised Code, which reads as follows:
‘‘The Governor may demand from the Governor of any other state the surrender of any person charged in this state with failure to provide for the support of a person in this state and may surrender on demand by the Governor of anv other *160 state any person charged in such other state with the failure to provide for the support of a person in such other state. Sections 2963.01 to 2963.29, inclusive, and 107.04 of the Revised Code apply to the demand although the person whose surrender is demanded was not in the demanding state at the time of the commission of the crime and although he has not fled therefrom. Neither the demand, the oath, nor any proceedings for extradition, pursuant to this section, need state or show that the person demanded has fled from justice, or that he was, at the time of the commission of the crime, in the demanding or other state.
“Any obligor contemplated by this section, who submits to the jurisdiction of the court of such other state and complies with the court’s order of support, is relieved of extradition for desertion or nonsupport during the period of such compliance.”
This section has been judicially construed only once in Ohio, in the case of Sands v. Sands, 73 Ohio Law Abs., 331, 136 N. E. (2d), 747. In that case a criminal proceeding had been instituted in the state of Kansas against a father for child desertion, and Kansas was seeking to extradite him to answer to such charge. In an attempt to prevent extradition by taking advantage of the last paragraph of Section 3115.04, Revised Code, the father filed a petition in the Common Pleas Court of Hamilton County seeking an order from that court requiring him to support his child. In a well reasoned opinion, Judge Hoy of the Common Pleas Court held that the statute gave the Ohio court no such jurisdiction in the absence of an initiating support action in the state of Kansas.
The Attorney General of Ohio reached a like conclusion in interpreting the section. Opinions of Ohio Attorney General (1953), 408, No. 3009. And a California court reached the same conclusion on identical facts when extradition was sought by the state of Ohio. In re Floyd, 43 Cal. (2d), 379, 273 P. (2d), 820. See, also, 24 Cincinnati Law Review, 139.
Although this extradition section of the Uniform Support of Dependents Act has been judicially interpreted only occasionally, it has been the subject of much comment in the law reviews. See 37 American Bar Association Journal, 93; 9 Ohio State Law Journal, 665; 45 Illinois Law Review, 252; 23 Cincinnati Law Review, 75.
*161 Paul W. Scbuch, of the Cincinnati Bar, in the last-cited article said:
“Although the act is concerned primarily with civil actions, it has provided a means of criminal enforcement whereby extradition may be expedited. The Governor of an initiating state may demand from the Governor of a responding state the surrender of a defendant charged with failing to provide. It is unnecessary to prove the usual prerequisites of extradition, i. e., that the accused is a fugitive from justice or was present in the demanding state at the time of the commission of the crime. ’ ’
That analysis is in line with the following provision of Section 3115.22, Revised Code:
“The remedies provided by Sections 3115.01 to 3115.21, inclusive, of the Revised Code, are in addition to, not in substitution for, any.other remedies.”
Obviously, Section 3115.01 et seq., Revised Code, give an alternative to the complainant or obligee in another state to proceed either under the Uniform Support of Dependents Act or under the process of criminal extradition, and Section 3115.04 certainly expedites the latter process. However, while either or both courses of action may be pursued, the election lies wholly with the demanding state and with the obligee, and neither the obligor nor the responding state is in a position to require that either or the other be pursued.
Nor does Section 3115.04, Revised Code, eliminate the requirement that a crime must have been “committed” before extradition can be had. It merely relieves the demanding state of the necessity of stating or showing that the person demanded was “in the demanding state at the time of the commission of the crime.” Section 2963.06, Revised Code, has the same requirement concerning the “committing” of the crime. Under either statute the person whose extradition is sought must have been charged with “committing an act” in Ohio which results in a crime in the demanding state.

Judgment affirmed.

Wetgandt, C. J., Zimmerman, Matthias, Herbert and Peck, JJ., concur.