HEARD NOVEMBER TERM, 1872.

## MASSEY *vs.* BROWN.

B, D and C were sureties in the guardianship bond of S, guardian of M, S and C became insolvent, and D died, leaving B his executor. S was indebted to M, on his accounts as guardian, in the sum of $10,578.98. M, after he became of age, compounded with B, in his individual right, for $2,000, and gave him a general release from his liability as surety, it being verbally understood between them that the release should not prejudice M's rights against the estate of D: *Held*, That the liability of D's estate to M was not discharged by the release.

M claimed against the estate only one-half the debt, and the appeal was from a decree rejecting the claim. This Court reversed the decree and remitted the case to the Circuit Court, with instructions to consider and decide what equities, if any, as between B and the estate of D, grew out of the composition.

Although the general rule is that a release of one of several joint obligors discharges the others, yet equity will restrain the general effect of the release, according to the intent of the parties, and such intent may be shown by parol.

BEFORE THOMAS, J., AT LANCASTER, JUNE TERM, 1872.

Bill in equity by D. W. Brown, executor of Dixon Barnes, deceased, plaintiff, against John B. Erwin and wife, creditors of Barnes and others, defendants, for settlement of the estate of the testator.

Creditors were called in by publication to establish their claims before a Referee, and in pursuance of the call B. F. Massey presented a claim, which arose as follows: B. F. Massey, the claimant, was the ward in Chancery of Samuel B. Massey, deceased, and Barnes, the testator, Brown, his executor, and James E. Cureton, were sureties in the guardianship bond of Samuel B. Massey, which was in the penal sum of $26,500, and bore date the 16th of June, 1856. Cureton was dead, and his estate, and also the estate of the guardian, were insolvent.

The returns of the guardian showed that he was indebted to his ward in a sum which amounted, on the 23d of August, 1869, to $10,578.98. The claim was for half this sum, or $5,289.49, besides interest.

Erwin and wife contested the claim, and insisted that it had been discharged by a release given by the claimant to D. W. Brown, which was proved, and is as follows:

"STATE OF SOUTH CAROLINA, ⎫
    "LANCASTER COUNTY.      ⎬

" Whereas, Daniel W. Brown, of the County of Lancaster and State of South Carolina, on the 16th day of July, in the year of our Lord one thousand eight hundred and fifty-six, became surety, together with Dixon Barnes and James E. Cureton, for Samuel B. Massey, deceased, guardian of the person and property of Bartlett F. Massey, (all of the County and State aforesaid) in the penal sum of twenty-six thousand five hundred dollars ; and whereas the said Samuel B. Massey hath made default in the premises, failing to discharge the obligations resting upon the guardian of the property of the said Bartlett F. Massey ; and whereas the said Samuel B. Massey is now dead and his estate is totally insolvent, and the sureties upon his said guardianship bond have become liable to the said B. F. Massey for his deficit in the premises, to wit: the amount of ———— dollars, more or less: Now know all men by these presents, that I, the said Bartlett F. Massey, of the State and County aforesaid, being of full and lawful age, freely and voluntarily, for and in consideration of the sum of two thousand dollars, to me in hand paid, by the said Dan'l W. Brown, of the said State and County, (the receipt whereof I do hereby acknowledge,) have remitted, released, and forever discharged, and I do hereby, for myself, my heirs, executors, administrators and assigns, remise, release and forever discharge the said Daniel W. Brown, his heirs, executors and administrators, of and from all liability upon said guardianship bond, and from all debt, demand, action, and cause of action, which I now have in law or equity, or which may result from the existing state of things. ·

" In testimony whereof I have hereunto set my hand and seal, this the 23d day of August, A. D. 1869.

     (Signed)                        B. F. MASSEY, [L. S.]

       Witnesses :

(Revenue stamps affixed before signing.)

                D. A. BELK, ⎫
                JOHN BROWN, ⎬ (Signed.)

The claimant, in reply, testified as follows :

"That Brown was the executor of Barnes' estate, when witness executed the release. John Brown, the son of D. W. Brown, drew up the release. Mr. Daniel Brown got his son to draw up this release in pursuance of the bargain which he made with his father. Mr. Daniel Brown proposed this compromise." (The claimant proposed to give in evidence the declaration of D. W. Brown at the time and previous to the execution of the release. Erwin and wife objected to such declaration.) Subject to the objection, the following testimony was taken down : " Witness says that Mr. Daniel W. Brown came to his (witness') house to see if he could make a compromise, and asked witness what he would take ; witness told him he did not know about making a compromise with him, as witness did not know if he would get anything from any of the other parties or not ; he (witness) had been told that the estate of Dixon Barnes was insolvent, and witness told Brown so. Mr. Brown told witness that he had come to make a compromise for himself, and that Barnes' estate should pay, and he (Brown) would see to it. Witness told Brown if that was the case he would make the compromise with him, as an individual, and no further. Witness and Brown agreed to the sum of two thousand dollars. Witness understood, from the conversation of Mr. Brown, that he meant to say that the estate of Dixon Barnes should pay its part of the liability on the guardianship bond of S. B. Massey, without reference to the compromise with Brown, as an individual. Witness thinks he mentioned at the time the amount due by S. B. Massey, as guardian, to him, about the sum of ten thousand dollars ; witness did not know the exact amount."

On the 27th of September, 1871, the Referee filed his report upon the claim, in which he states his conclusion to be " that the release of D. W. Brown by B. F. Massey operated to discharge also the estate of Barnes, his co-obligor, from liability on the bond, and that the claim cannot be allowed."

To this report the claimant excepted, on the ground that the release of Brown did not operate as a discharge of the co-surety, Barnes.

The decree of His Honor is as follows :

THOMAS, J. On the 27th day of December, 1871, a report was filed in this cause by the Referee on the claims of creditors of the

estate of Colonel Dixon Barnes, deceased, into which was incorporated a special report on the claim of B. F. Massey.

This claim is for $10,578.98, which appears to have been the balance ascertained to be due him 1st June, 1859, by his guardian, Samuel B. Massey, deceased.

The claim, as appears from the report, has the following for its origin: Col. Barnes became one of the sureties on the guardianship bond of Samuel B. Massey, to the Commissioner in Equity, dated June 19th, 1856. The other sureties were D. W. Brown and one James E. Cureton. The guardian, Massey, and the surety, Cureton, are both dead, and their estates insolvent.

On the reference, the allowance of this claim was resisted by John B. Erwin and his wife, Mary B., who, in right of the latter, are the principal creditors of the estate, and the latter of whom is the only child of Col. Barnes.

The ward, B. F. Massey, attained his majority on the 18th day of December, 1861. On the 23d day of August, 1869, he executed to Brown, the co-surety, a release, under seal, from all liability on the guardianship bond, which was full and unreserved, and contained no allusion to any other of the co-obligors on the bond. The consideration stated is $2,000 paid by Brown. This release was relied upon as operating also a release of the estate of Barnes from liability, and as a bar to the claim. The Referee, regarding it as having this effect, in his report, decided that the claim could not be allowed. To this report, B. F. Massey put in the following exception: " Because the release of B. W. Brown as surety on said bond did not operate as a discharge of the liability of his co-surety, the said D. Barnes." This exception raises the only question for the consideration of the Court on the report.

The doctrine that the release of one of the obligors of a bond is a release of the others is too firmly established to be successfully questioned now. As early as the case of *Bower* vs. *Swadlin,* reported in 1 Atkins, 294, Lord Hardwicke speaks of it as settled principle. In that case he used this language: " There is no doubt but a release to one obligor is a release in equity to both, as well as in law." The same principle was fully recognized in *Cheatham* vs. *Ward,* 1 B. and P., 630. This rule has been steadfastly adhered to by the Courts, both English and American, ever since.—*Rowley* vs. *Stoddard,* 7 Johns., 207 ; *Averill* vs. *Lyman,* 18 Pick.; *Carmeger* vs. *Morrison,* 2 Met., 381, 407 ; *Smith* vs. *Tunno,* 1 McC. Ch., 243.

The rule seems to apply to the obligors without regard to their status as principal and surety, and to require that the release shall be under seal. It appears to be distinct from those rules regulating the liability of sureties with reference to the conduct of principal obligor and obligee. Under the latter class the rights of sureties are placed on higher ground than those of mere principal obligors, and are more zealously protected by the Courts. The case of *Rees* vs. *Berrington*, 2 Ves., Jr., 540, is a leading example of this class. There it was decided that the obligees taking notes from the debtor, extending the time of payment beyond that fixed in the bond, without the consent of the surety, discharged the latter from liability on the bond. The reason upon which Lord Elden based this decision was, that the contract had been varied and the risk of the surety increased. This is, however, to some extent, the reason why the release of one obligor is a release of the others, only in the latter instance the contract is absolutely extinguished.— *Villings* vs. *Conseque*, Pet. C. C., 301. I apprehend that the extension of time to the surety would not discharge the principal; and in this, as well as many other respects, the Courts have interfered for the protection of the rights of sureties, even when those rights have only been jeopardized by the conduct of the principal debtor and obligee. The surety, having paid the debt, has the right to call upon his co-sureties to refund to him their quota of the amount paid, or, even without paying it, to call upon them, where the principal is insolvent, to contribute towards raising a fund sufficient for its payment.— *McKenna* vs. *George*, 2 Rich. Eq., 15. The release of one of his co-sureties would not only defeat this right, and thus increase his risk, but would so change the contract into which he had entered as to enable him to say, with truth, " *In Hæc Fædera Non Veni.*"

But it was urged in the argument by the counsel of Massey that the consent of Brown to his own release, being the consent of the executor of Barnes, prevented the release from operating to discharge the estate of the latter. It may be well doubted whether, even if Brown had by parol consented to the technical release, *i. e.* release under seal of one of the other sureties, he could not still have claimed his own discharge from liability on the bond. But his parol consent, as the executor of Barnes, to the release of a co-surety, presents a very different question, and one much less involved in doubt. The authorities are clear to the point that he

could not, by his contract, create a charge upon the estate of Barnes unless the estate had been benefited by the contract.— *O'Neall* vs. *Abney*, 2 Bail., 317 ; *Welsh* vs. *Davis*, Supreme Court decision, MS. Here, if his consent to his own release can be construed into a contract that the estate of Barnes should not be thereby discharged, he has attempted to continue a charge upon the estate, from which, but for his contract, it would, by operation of law, have been released. This, we have seen, the law will not permit. None but the parties beneficially entitled to the estate could enter into a contract of the kind which would be binding upon it.

It is therefore ordered and decreed that the exception be over- ruled and the report confirmed. It is further ordered that B. F. Massey pay the costs arising upon his claim ; and that the remaining costs of the cause, not previously paid, be paid out of the land sales.

And it is further ordered that the balance of the proceeds of the real estate sales be apportioned and applied toward the satisfaction of the debts still unpaid, in the order of their priority, as established in the report.

The claimant appealed on the following grounds:

1. Because the release of D. W. Brown as surety on the said bond did not operate as a discharge of the liability of his co-surety, the said D. Barnes, and the Circuit Judge erred in decreeing otherwise.

2. Because said release was an arrangement between co-sureties to bear their proportionate part of the debt, in which Brown acted for the estate of Barnes, he being the only legal representative of said estate, and, as such, had a right to consent that the estate of Barnes should remain bound for its proportionate part, and did so consent and stipulate with the appellant.

3. Because the release was beneficial to the estate of Barnes by relieving said estate of one-half of a joint liability, and being made with the assent of the executor of Barnes, could not discharge said estate from the whole of said liability.

*Kershaw*, for appellant :

This case resolves itself into two points—

First. Does a release by the debtor of one of two co-sureties operate as a discharge of the remaining surety ?

Answer. It will not.

Although it seems to be settled at law that a release or a discharge of one surety by the creditor * * * is a discharge of the others, this is not the case in equity.—2 Lead. Cases in Eq., Pt. 2, 367, Am. Ed.

By the civil law the creditor may *transact* with one of the sureties without prejudicing his right of resort to the others, but he cannot recover from the others more than the proportion they would have paid, supposing the co-surety with whom the transaction had taken place had contributed his share.—Burge on Suretyship, 155.

Such is also the law of England. The creditor may release or compound with or give time to one co-surety without prejudicing his right to proceed against the others, but he cannot recover from the other co-sureties more than the proportion they would have paid, supposing the co-surety released had contributed his share.—*Id.*, 156; refers to *Ex Parte Gifford,* 6 Ves., 805; *Dunn* vs. *Shee,* 1 J. B. Moor, 2; *Stirling* vs. *Forrester,* 3 Bli., 575.

The release of the surety does not discharge the principal, nor does the release of one co-surety discharge the other co-sureties.—*Id.*, 164.

"The principal is to discharge all the obligations of all the sureties; but they stand, with regard to each other, in a relation which gives rise to this right among others: that if one pays more than his proportion there shall be a contribution for a proportion of the excess beyond the proportion which, in all events, he is to pay. The party has a right to say for himself that he will not consider that relation, but will take 6s, though the surety is liable to pay 10. He may say he will be passive as to the other 4s, or he will discharge the whole debt, and at his own risk, as to the remedy against the other surety; or he may reserve his remedy against the co-surety expressly. It depends upon the effect and terms of the bargain actually entered into. * * * * I have a strong opinion that, under the circumstances, the other persons liable upon this note are not discharged because Baylis was contented to make a bargain, the effect of which leaves him to his chance as to his ultimate liability between him and his co-surety."—Per Ld. Eldon, in *Ex Parte Gifford.*

The relation of principal and surety excepts the case from the rule of law.—*Smith* vs. *Winter,* 4 Mees and W., 465.

Second. Should these propositions not be sustained, do the circumstances of this case preclude the discharge of the executor of Barnes as co-surety, by reason of the release of Brown?

Answer. Yes, because the release was made with the assent of the executor of Barnes, and the remedy was reserved.

Even in the case of a release of the principal debtor, the surety will not be discharged, if there be such reservation expressed or implied.—*Ex Parte Gifford*, 6 Ves., 805 ; 2 Lead. Cas. in Eq., Am. Ed., Pt. 2, 383.

A release of the maker of a note, with the assent of the endorser, will not discharge the latter, nor when it appears the intention of the parties to preserve the liability of the endorser.—*Eldridge* vs. *Chacon*, Crabbe, 296.

The personal representatives of a deceased surety are competent to assent to such an arrangement.—*United States* vs. *Cushman*, 2 Sumner, 310.

This point is further sustained by *Smith* vs. *Tunno*, 1 McC. Ch., 453 ; *Rees* vs. *Berrington*, 2 Ves., 543.

All the cases turn on the point that the transaction was had without the privity of the surety.

The evidence of the declarations of D. W. Brown at the time and previous to the execution of the release is objected to. They are not offered to explain, vary or contradict the language of the release, hence are admissible.—1 Green. Ev., § 282.

Such conversations are admissible as part of the *res gestæ.*

The defendant may prove by the subscribing witness, as part of the transaction, the conversation of the parties to the instrument before and at the time of the execution, which may qualify it or affect its validity.—*Volk* vs. *Gaillard*, 4 Strob., 99.

But the rule does not apply, because the evidence is only introduced to show the assent of the executor of Barnes to the transaction and the reservation of the right to proceed against him, which are independent facts outside the deed.

This transaction, being a settlement of a guardian's account with his ward, by one of the sureties to the guardianship bond, will be scrutinized. It can only be sustained so far as it was consistent with the utmost good faith. If the release had the effect contended for by respondent, then it was obtained by fraudulent representations and is void.—1 Story's Eq. Jur., §§ 317, 318, 321 ; 1 Rich., 435.

*Moore*, contra :

The admission of the appellant that he can claim against the estate of Barnes only the one-half of the balance due him by his

guardian, is, in itself, fatal to the claim ; for it is predicated upon the assumption that the release of the co-surety, Brown, from liability on the guardianship bond, changed the contract of Barnes from a liability for the whole balance into a liability only for the one-half. It is, therefore, a claim independent of the bond, and is entirely without foundation.

A release to one co-obligor of a bond is a release and discharge of the whole of them.—*Executors of Wilson* ads. *Minor Winn*, 2 Bay., 517 ; *Rowley* vs. *Stoddard*, 7 Johns., 207 ; *Averill* vs. *Lyman*, 18 Pick., 346 ; *Goodman* vs. *Smith*, 18 Pick., 414 ; *Carnegee* vs. *Morison*, 2 Met., 381, 407.

Such a release actually extinguishes the obligation.— *Willings* vs. *Conseque*, Pet. C. C., 301.

·A release or discharge of one surety by the creditor is a discharge of the others.—*Nicholson* vs. *Kivel*, 4 Ad. & E., 675.

A release by ward to guardian discharges surety.—*Kirby* vs. *Taylor*, 6 John. Ch., 242.

*Quo ad* the ward, the sureties were all principal obligors, and, with respect to each other, stood in *equali jure*. The discharge of ONE was therefore a discharge of all.

The second ground of appeal is contradicted by the release, which contains no stipulation that the co-sureties should " bear their proportionate part of the debt." The consideration paid by Brown for his release was only $2,000.

Even if the declarations of Brown made before the release be evidence, they amount to no more than a mere personal undertaking, which could not bind the estate of Barnes.—*O'Neall* vs. *Abney*, 2 Bail., 317 ; *McBeth* vs. *Smith*, 3 Brev., 511 ; *Mayer* vs. *Galluchatt*, 6 Rich. Eq., 1 ; *Welsh* vs. *Davis*, Supreme Court, 1871, MSS.

Inasmuch as the funds in Court were not under the control of Brown, they could, in no point of view, be bound by a promise made by him.

Jan. 8, 1872. The opinion of the Court was delivered by

MOSES, C. J. The proposition of the appellant, that a release by the debtor of one of the joint and several sureties does not operate to discharge the other, cannot be maintained. At law, a discharge of one surety by the creditor will bar a recovery against all in the like relation to the debt.—Burge on Suretyship, 156 ; *Nicholas* vs.

*Revell*, 4 Ad. & Ell., 675. The same rule will generally prevail in equity. The argument before us, insisting on a contrary doctrine, relies for its support on *Ex Parte Gifford*, 6 Ves., 805, in which Lord Eldon held that the discharge of one surety did not release the other sureties, and although Mr. Justice *Story*, in note to page 572 of his first volume on Equity Jurisprudence, interposes to defend the distinguished Chancellor from the strictures to which his decision has been subjected, it must be admitted that his conclusion has not been accepted as the ruling authority on the question.—*Nicholson* vs. *Revell*, 6 Nev. & Mann., 192, 200; *Evans* vs. *Brembridge*, 35 Eng. L. & E. R., 398.

Equity construes a release according to the intention of the parties, and will give it no operation beyond the design or the purpose it was intended to accomplish. The principle is so fully enforced by Chancellor Kent, in *Kirby* vs. *Taylor*, 6 John. Ch., 242, that any further reference to authority in support of the rule is unnecessary. It is certainly in strict consistency with the doctrine of equity, which always seeks, if possible, to give effect to the intent which induced the Act, if it can be ascertained without a violation of the rules of law. We cannot, however, refrain, because they appear so pertinent to the case before us, from referring, in the language of the Chancellor, to some of the authorities on which he rested his opinion : Lord Hardwicke said, in the case of *Cole* vs. *Gibson*, 1 Ves., 503, "that it was common in equity to restrain a general release to what was under consideration at the time of giving it." And, again, in *Ramsden* vs. *Hitton*, 2 Ves., 304, he observed, "that if a release be given on a particular consideration recited, notwithstanding that the release concludes with general words, yet the law, in order to prevent such surprise, will construe it to relate to the particular matter recited, which was under the contemplation of the parties, and intended to be released."

The declarations of D. W. Brown, at the time of the execution of the release, were not offered to explain, vary, or contradict the language of the instrument discharging him. It was not to add conditions or restrictions which would impose on the immediate parties to it, as between themselves, any other obligations than those which it plainly expressed, or in any way to contravene or disturb the contract between them, but they were offered to show that while Brown was not to be held chargeable by Massey for any further amount, as the consideration for the discharge of his lia-

bility on the bond, the rights of Massey, as to the other surety, Barnes, were not to be prejudiced by reason of his release. They were to show something extrinsic to, and outside of, the discharge. Viewing the evidence in this light, we do not preceive any objection to its competency. Giving effect to the release according to the intention of both the parties, and remembering that Brown was the executor of Barnes, we cannot hold it as discharging the estate of which he was the personal representative from liability on the bond.

While we must reverse the judgment of the Court below on the effect of the discharge, another question arises, and should be determined before a final adjudication can be had, and that is, as to the liability of Brown, (conceding the principal and the other surety, Cureton, to be insolvent,) to contribute to the amount which the estate of Barnes may be required to pay for the default of the guardian. In other words, does the compromise of Brown, as between him and the estate he represented at the time, enure also to its benefit, and, if so, to what extent? As all the parties are before us, it is possible we have authority to decide it; but Brown should be first heard, and we prefer first, therefore, to remit it to the judgment of the Circuit Court.

The decree of the Judge below is reversed, and the case is remanded to the Circuit Court for the County of Lancaster, to be heard on the point indicated in this opinion, and such other questions as may further properly arise out of the pleadings.

*Wright*, A. J., and *Willard*, A. J., concurred.