POOLE v. BRADHAM *ET AL.*

(141 S. E., 267)

On Petition for Rehearing January 13, 1928

1. GUARDIAN AND WARD—GUARDIAN MAY FOR VALUABLE CONSIDERATION RELEASE GUARANTORS ON BOND AND MORTGAGE BELONGING TO WARD.—Guardian *held* to have authority to release, for valuable consideration, guarantors on bond and mortgage belonging to ward.

2. GUARDIAN AND WARD—GUARDIAN MUST INVEST WARD'S FUNDS, EXERCISING REASONABLE DILIGENCE TO INSURE SAFETY OF INVESTMENT AND PRODUCE INCOME.—It is duty of guardian to invest funds of ward, and in making such investment he must exercise reasonable diligence and care to insure safety of investment and to produce income for ward.

3. GUARDIAN AND WARD—GUARDIAN'S RELEASE OF GUARANTORS ON BOND AND MORTGAGE BELONGING TO WARD HELD SUPPORTED BY VALUABLE CONSIDERATION, WHERE GUARANTORS WAIVED RIGHT TO PAY INDEBTEDNESS AND TAKE OVER INVESTMENT WHICH WAS MUCH DESIRED.—Guardian's release of guarantors on bond and mortgage belonging to ward *held* supported by valuable consideration, where they consented and agreed to be released from liability under guaranty, rather than press their legal right to pay indebtedness and take over investment which was much desired, in view of high rate of interest, scarcity of good investments, and plentiful supply of money.

4. GUARDIAN AND WARD—GUARDIAN HELD JUSTIFIED IN RELEASING GUARANTORS ON BOND AND MORTGAGE BELONGING TO WARD TO RETAIN INVESTMENT IN VIEW OF DESIRABILITY THEREOF.—Guardian *held* fully justified in releasing guarantors on bond and mortgage

belonging to ward and retaining investment, where bond and mortgage were due, money was plentiful, good investments were scarce, security for debt was ample, and investment bore interest at high rate.

5. Guaranty—Release of One Guarantor on Bond and Mortgage Operates to Discharge Others in Like Relation to Debt Unless Parties Intended Otherwise.—Discharge of one guarantor on bond and mortgage operates in equity to discharge all others in like relation to debt, unless it be shown that parties intended otherwise, since equity will construe release according to intent of parties.

6. Guaranty—Guardian's Release of Two Guarantors on Bond and Mortgage Belonging to Ward Held to Discharge Other Guarantor.*—Guardian's release for valuable consideration of two guarantors on bond and mortgage belonging to ward *held* to operate as matter of law to discharge the other guarantor, where evidence failed to show contrary intent of parties, guarantors being released to allow guardian to retain investment which was much desired.

### On Petition for Rehearing

7. Guaranty—Guardian's Release of Co-Guarantors on Bond and Mortgage Belonging to Ward Held Not "Compounding of Debt" Under Statute (Civ. Code 1922, §§ 5598, 5600).—As respects discharge of guarantor, guardian's release of co-guarantors on bond and mortgage belonging to ward *held* not compounding of debt within Civ Code 1922, §§ 5598, 5600, where release was made in good faith so that desirable loan might be continued as investment for ward, and there was no compromise of liability by payment of smaller sum.

8. Guaranty—Joint Guarantors are "Joint Debtors" Within Statute Relating to Compounding of Debt (Civ. Code 1922, §§ 5598, 5600).—As respects discharge of guarantor, joint guarantors are included under term "joint debtors" as used in Civ. Code 1922, §§ 5598, 5600, relative to compounding of debt, and are governed by same rules as other joint debtors.

9. Guarantors—Guaranty Accompanying Assignment of Bond and Mortgage Held Joint Where Assignors Guaranteed Payment and Another "also" Guaranteed it, So That Release of Assignors Released All Guarantors.—Guaranty which accompanied assignment of bond and mortgage *held* to be joint and not sev-

Note: As to duty of guardian as to investment of money belonging to ward, see 12 R. C. L., 1131; 2 R. C. L. Supp., 1557.

On the question as to effect of voluntary discharge of one of two or more sureties or guarantors on liability of co-sureties or guarantors, see annotation in L. R. A., 1918-E, 95.

eral, in light of circumstances surrounding its execution and other purposes for which instrument was intended, where assignors guaranteed payment of debt and interest and another "also" guaranteed such payment, so that all were released under assignee's release of assignors.

Before DENNIS, J., Clarendon, April, 1926.   Affirmed.

Action by Frances Elizabeth Poole, an infant, by her guardian *ad litem,* etc., against Ella Bradham and others. Judgment for defendants, and plaintiff appeals.

*Mr. Raymond Schwartz,* for appellant, cites: *Guardian has no authority to release securities of his ward:* ‛11 S. C., 560; 9 S. C., 389; 54 S. C., 231. *Minority rule:* 35 N. E., 47; *Without approval of Court cannot release securities or waive any rights of ward:* 21 Cyc., 75; 1 Hill Eq., 405; 9 Rich. Eq., 325; 11 S. C., 561. *Cannot release securities without full consideration:* 28 C. J., 1123, 1125; 11 S. C., 551; Id., 407. *In equity it is permissible to enquire into the consideration of a sealed instrument:* 13 C. J., 315. *Agreement made without consideration not enforced by law:* 13 C. J., 313, 315, 318. *"Consideration"* 13 C. J., 353; 32 S. C. L., 329; 80 Fed., 513; 61 S. C., 537; 38 Cyc., 131. *"Release":* 40 S. C., 94; 34 Cyc., 1050; 68 S. E., 525; *Creditor has power to compound a debt with one of several joint debtor:* Sec. 5598, Code; 72 S. C., 330. *Either one of several joint guarantors may be sued for the entire amount:* 28 C. J., 938. *No distinction between the parties at bar:* 107 S. E., 254; 32 Cyc., 20; 28 C. J., 890. *Cases distinguished:* 135 S. E., 646; 41 S. C., 217. *Distinction between surety and guarantor:* 69 S. C., 168. *No alteration:* 70 S. C., 148; 67 S. C., 561; 97 S. C., 255.

*Messrs. Harby, Nash & Hodges,* for Purdy and Bland, cite: *Guardian charged with primary duty of investing funds in his hands belonging to his ward:* 1 S. C., 220; 95 S. C., 351. *For valuable consideration, may release investment or discharge its guarantors:* 71 S. C., 346. *Cases distinguished:* 9 Rich. Eq., 325; 11 S. C., 561. *Retention*

*of investment by guardian, constituted a valuable considera-
tion for release of guarantors:* 135 S. E., 646.

*Messrs. Lee & Moise,* for Selina Levi, cite: *"Release":
Burge on Surety,* 156; 4 S. C., 85. *Power of guardian over
property of his ward:* 10 S. C., 409. *Not applicable to this
case:* Sec. 5598, Code. *Any alteration of a written security
in a material point renders it void at least as to a surety:*
14 S. C., 357; 19 S. C., 257; 23 S. C., 588; Id., 238; 41
S. C., 217.

August 29, 1927.

The opinion of the Court was delivered by MR. JUSTICE
STABLER.

On November 17, 1910, one William Ridgeway executed
and delivered to R. O. Purdy and R. J. Bland, two of the de-
fendants in this case, his bond in the sum of $6,850, due
and payable five years after that date, with interest at the
rate of eight per cent. per annum, and a mortgage of real
estate to secure payment thereof.

On the same date Purdy and Bland assigned, in writing,
the bond and mortgage to Isaac Schwartz, the duly appointed
and acting guardian of the estate of the infant plaintiff in
this action, and at the same time and in the same writing,
guaranteed the payment of the debt and interest; and one A.
Levi joined with them in the execution of the written guar-
anty. The following is the assignment and guaranty:

"For value, we hereby transfer, assign and deliver this
bond to Isaac Schwartz, as guardian, together with the mort-
gage of real estate of even date herewith made to secure its
payment, and guarantee payment of the debt and interest;
and I, Abe Levi, one of the undersigned also guarantee the
payment of the debt and interest aforesaid."

On or about October 27, 1919, Isaac Schwartz, the
guardian, executed on the bond a release in writing, as
follows:

"I hereby release R. O. Purdy and R. J. Bland, from all
liability under the above guaranty."

The interest was collected each year by one or more of the guarantors, and paid over to the guardian, Isaac Schwartz; on November 17, 1920, for the first time, default was made in the payment of the annual interest. In the latter part of the year 1921, Isaac Schwartz resigned as guardian, and Raymond Schwartz, his son, was appointed in his stead. Subsequently, this action was commenced upon the bond and for the foreclosure of the mortgage. In the meantime the mortgagor, Ridgeway, had died, and his heirs at law were properly made parties to the action. The plaintiff, taking the view that her original guardian, Isaac Schwartz, was without authority to release the guarantors, Purdy and Bland, and that they were liable for the payment of the debt and interest, also made them defendants in the suit. A. Levi, the other guarantor, having died prior to the commencement of the suit, Selina Levi, as his executrix, was made a party defendant.

By their answer Purdy and Bland set up their release, and Selina Levi, as executrix, by her answer pleaded that the release of Purdy and Bland had operated to discharge, as a matter of law, the other guarantor, A. Levi. The matter was referred to T. H. Stukes, Esq., as special referee. In his report to the Court he held that, as a matter of law, the guardian, Isaac Schwartz, was without authority to execute the release, that the release was null and void, and that Purdy and Bland were liable for the debt and interest under their guaranty; he held further that, as the release of Purdy and Bland was without authority of law and invalid, the defense set up by the estate of A. Levi must fall.

Exceptions were taken to this report by Purdy and Bland and by Selina Levi, as executrix, and the matter was heard by his Honor, Judge Dennis, who, as to these questions, reversed the special referee, holding that the guardian, as a matter of law, had authority, for valuable consideration, to execute the release; that the release was executed for a

valuable consideration, and that Purdy and Bland were not liable under their guaranty; and that, two of the guarantors having been released without the other's consent, such release operated, as a matter of law, to discharge the other.

The plaintiff appeals to this Court from the decree of Judge Dennis. There are many exceptions—too many. The main questions are few and may be thus stated: (1) Has a guardian authority to release, for valuable consideration, guarantors on a bond and mortgage belonging to his ward? (2) If he has such authority, is the alleged release in this case supported by a valuable consideration? (3) If the release of Purdy and Bland was valid, did the action on the part of the guardian in releasing them operate to release the third guarantor, A. Levi?

As to the first question, it appears that the holdings 1, 2 of the Circuit Judge are fully supported by authority. It is a well-established rule of law that it is the duty of the guardian to invest the funds of the ward, and that in making such investment he must exercise reasonable diligence and care in order to insure the safety of the investment and to produce an income for the ward.

In 12 R. C. L., at page 1131, we find:

"No duty is more clearly imposed by the very nature and purpose of a guardianship than to invest the ward's funds in such a manner as to produce an income, and unless the Statute expressly requires it, the guardian can make such investments without an order of Court. * * * In making investments the guardian must act in absolute good faith, and with reasonable diligence to insure the safety of the investment. The modern motto 'safety first' applies nowhere more strongly than in the investment of trust funds."

See, also, *Nance v. Nance,* 1 S. C., 209.

In 15 Am. & Eng. Ency. of Law, at page 71, we find:

"The guardian has no power to relinquish, abandon, or release, without consideration, any right or interest of the

ward, nor to bind him by admissions contrary to his interest."

In *Capehart v. Huey,* 1 Hill's Equity, at page 409, the Court said:

"A guardian, as the officer of the Court of equity, is charged with the preservation of all the rights and interests of the ward. He cannot, however, generally, change the nature or diminish the capital of the estate; but with this exception, he is authorized to do any act for the infant which a prudent man in the management of his own business would do."

Of course, a guardian can make a legal satisfaction of a mortgage belonging to his ward upon the payment of the debt in full, and in *Werber v. Cain,* 71 S. C., 346; 51 S. E., 123, it was held that a release or discharge of a mortgage by the guardian served to release the lien of the mortgage in favor of a subsequent mortgagee against the ward, although the mortgage debt had not in fact been paid, there being no evidence of fraud or collusion or notice that the mortgage debt was unpaid. The Court said:

"It is clearly within the apparent authority of the guardian to execute a discharge and satisfaction of a mortgage to him as such, and cause the same to be entered of record, as it is his duty to collect and give acquittance for debts due him as guardian. * * * In the absence of any evidence of fraud, or collusion, or knowledge affecting plaintiff with notice that the mortgage had not in fact been paid, plaintiff had a right to presume that the guardian was not acting in conflict with his duty."

It being true, then, that the guardian may discharge the entire indebtedness and release all securities when the debt is paid in full, it follows that, for valuable consideration, he can discharge the indebtedness *pro tanto* or release a portion of the security.

Having reached this conclusion, about which there is little or no contention, we shall now proceed to consider the second question, namely, whether the release executed by the guardian to Purdy and Bland is supported by valuable consideration.

An examination of the record discloses that at the time of the execution of the release by the guardian the indebtedness evidenced by the bond and mortgage had long been due; that money was plentiful and good investments were scarce, that the security for the debt was worth at least $12,000, nearly twice the amount of the loan, and that the investment bore interest at the rate of 8 per cent. per annum, and that such investments, with so high a rate of interest, were difficult to obtain.   The bond and mortgage being due, the guarantors had a right, as a mater of law, to pay the indebtedness and have the security assigned to them by the guardian.   Under these circumstances, Purdy and Bland, having on hand sufficient money to pay the indebtedness, through Mr. Bland, approached the guardian and stated to him that they desired to either pay the indebtedness and have the securities assigned to them or be released from all liability under their guaranty.   The guardian asked to be allowed some time to think the matter over, which was granted, and after consideration, he decided, according to his own testimony, that it was to the best interest of his ward to release Purdy and Bland from their guaranty and retain the investment.

It is clear, then, that there was a valuable consideration flowing from Purdy and Bland to Schwartz, the guardian, through their consent and agreement to be released from the liability under their guaranty rather than to press their legal right to pay the indebtedness in full and take over the much desired investment themselves.

We are satisfied that all parties acted in good faith in the matter; there is no doubt, as is disclosed by the testimony, that the investment without the guaranty was a good one

—in fact, it is doubtful whether a better one could have been secured by the guardian at that time—and that if the guardian had then applied to the Court for permission to release the guarantors and be allowed to retain the investment, the Court would have granted the request. And no reason appears why the Court should not give effect now to what it would have done then. It appears to us, under this state of facts, that the guardian was fully justified in releasing the guarantors and retaining the investment.

Therefore, we conclude: (1) That the Circuit Judge was right in holding that a guardian has authority, as a matter of law, to execute, for valuable consideration, a release of security; and (2) that, as the release in question was for a valuable consideration, Purdy and Bland were discharged from all liability under their guaranty.

The only other question to be considered is whether the act of the guardian in releasing Purdy and Bland also operated to release Levi. The answer to this question must be in the affirmative.

In *Massey v. Brown,* 4 S. C., 85, the Court said:

"At law, a discharge of one surety by the creditor will bar a recovery against all in the like relation to the debt. *Burge on Suretyship,* 156; *Nicholas v. Revell,* 4 Ad. & Ell., 675. The same rule will generally prevail in equity. The argument before us, insisting on a contrary doctrine, relies for its support on *Ex parte Gifford,* 6 Ves., 805, in which Lord Eldon held that the discharge of one surety did not release the other sureties, and although Mr. Justice Story, in note to page 572 of his first volume on Equity Jurisprudence, interposes to defend the distinguished chancellor from the strictures to which his decision has been subjected, it must be admitted that his conclusion has not been accepted as the ruling authority on the question."

However, it was pointed out in that case that equity will construe a release according to the intent of the parties, and

that parole evidence is admissible to show such intent. The Court said:

"It is certainly in strict consistency with the doctrine of equity, which always seeks, if possible, to give effect to the intent which induces the act, if it can be ascertained without a violation of the rules of law."

Under this rule of construction, in equity the discharge of one surety operates to discharge all others "in the like relation to the debt," unless it be shown by competent testimony that the parties intended otherwise. It is clear that in the present case the governing purpose of the guardian in the whole transaction was to save the investment for his ward, and there is nothing in the record to indicate that the parties intended that the release should not extend, according to the general rule, beyond Purdy and Bland and discharge the other guarantor. It follows that when the guardian executed the release to Purdy and Bland, it operates, as a matter of law, to discharge the other guarantor, and that the Circuit Judge was correct in finding and holding that the estate of Levi is in no way liable.

These conclusions render unnecessary the consideration of the other and minor questions raised by the exceptions.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN, BLEASE, and CARTER, concur.

MESSRS. JUSTICES COTHRAN and BLEASE: In concurring we wish to express our very high commendation of the conduct of the present guardian, son of the former, in his efforts to protect the interests of his ward, despite the filial and financial considerations which would naturally have inclined him to a contrary course.

## On Petition for Rehearing

PER CURIAM. The appellant has filed a petition for rehearing of so much of this case as pertains to the liability

of the estate of Abe Levi, deceased, upon the ground that the Court in its opinion overlooked material questions of law and fact which, if they had not been overlooked, would have led the Court to conclude that the estate of Levi is liable under his guaranty despite the release of Purdy and Bland from their guaranty upon the same bond.

I. In its opinion, under the authority of *Massey v. Brown,* 4 S. C., 85, the Court announced the rule that in equity the discharge of one surety operates to discharge all others "in the like relation to the debt," unless it be shown by competent testimony that the parties intended otherwise, and stated that "in the present case * * * there is nothing in the record to indicate that the parties intended that the release should not extend, according to the general rule, beyond Purdy and Bland and discharge the other guarantor."

In the *Massey Case,* the Court, speaking to this point, said :

"The proposition of the appellant, that a release by the debtor of one of the joint and several sureties does not operate to discharge the other, cannot be maintained. At law, a discharge of one surety by the creditor will bar a recovery against all in the like relation to the debt. *Burge on Suretyship,* 156; *Nicholas v. Revell,* 4 Ad. & Ell., 675. The same rule will generally prevail in equity. The argument before us, insisting on a contrary doctrine, relies for its support on *Ex parte Gifford,* 6 Ves., 805, in which Lord Eldon held that the discharge of one surety did not release the other sureties, and although Mr. Justice Story, in note to page 572 of his first volume on Equity Jurisprudence, interposes to defend the distinguished chancellor from the strictures to which his decision has been subjected, it must be admitted that his conclusion has not been accepted as the ruling authority on the question. *Nicholson v. Revell,* 6 Nev. & Mann., 192, 200; *Evans v. Brembridge,* 35 Eng. L. & E. R., 398."

It is declared, however, that the above statement in the *Massey case* of the rule at law generally prevailing in equity is inconsistent with the following language used by the Court in that case:

"Equity construes a release according to the intention of the parties, and will give it no operation beyond the design of the purpose it was intended to accomplish."

When the entire language is considered together we think that the *inconsistency* is more imaginary than real. The Court states (1) what the rule is at law, (2) that the same rule *generally* prevails in equity, but (3) that in equity the intention of the parties when shown will control, and that in such cases the release will not operate beyond the design or purpose to be accomplished.

The Court said:

"The principle is so fully enforced by Chancellor Kent in *Kirby v. Taylor,* 6 John. Ch. (N. Y.), 242, that any further reference to authority in support of the rule is unnecessary. It is certainly in strict consistency with the doctrine of equity, which always seeks, if possible, to give effect to the intent which induced the act, *if it can be ascertained without a violation of the rules of law.*" (Italics added.)

In the *Massey case,* the declarations of Brown, made at the time of the execution of release, were admitted in evidence, not to vary the terms of the release, but to show the intention of the parties, Massey and Brown, that while Brown should be discharged from further liability on the bond, Massey's rights as to the other surety, Barnes, should not be affected by the release. The release in that case, as in the case at bar, contains no reference to the release or non-release of the other surety or guarantor. Hence it is clear that the Court, by reason of the release of the surety Brown, would have declared, under the general rule stated, that his cosurety Barnes was likewise discharged, if the evidence offered and admitted in the case had not shown

that it was the intention of the parties, at the time of the execution of the release, that the other surety should be released.

The appellant, in the case at bar, submits that the record shows that the parties intended that the release should not extend to Levi and cites certain testimony of Isaac Schwartz, the guardian, in support of this contention. We have again examined this testimony, and it shows only that the guardian did not in terms release, or "sign any release of," the estate of Levi, a fact about which there is no dispute; the testimony is a mere recital of actual occurrences and does not show that the parties had any intention that the general rule as to the release of a coguarantor should not apply in this instance.

II. It is also urged that the guardian's release of Purdy and Bland was a compounding of the debt by the creditor with Purdy and Bland, and that under Section 5598 of Volume 3 of the 1922 Code the release of Purdy and Bland did not release Levi. Section 5598 is as follows:

"Any joint debtor may make a separate composition with his creditor as prescribed in this section. Such composition shall discharge the debtor making it, and him only. The creditor must execute to the compounding debtor a release of the indebtedness or other instrument exonerating him therefrom. * * * An instrument specified in this Section shall not impair the creditor's right of action against any other joint debtor or his right to take any other proceeding against the latter unless an intent to release or exonerate him appears affirmatively upon the face thereof."

Section 5600, with reference to the same matter, provides:

" * * * And the debtor who has not compounded with his creditor may set up by way of discount against such creditor the amount compounded by his joint debtor."

The appellant cites the case of *Symmes v. Cauble,* 72 S. C., 330; 51 S. E., 862, and *Meyer v. Bouchier,* 107 S. C., 254; 92 S. E., 471, in support of his contention; but these cases do not control. In the *Symmes case* all the debtors had been reduced to the same rank by a judgment procured against them by the creditor, and so the question of suretyship was not involved. The *Meyer case* affirmed the *Cauble case,* but is not parallel to the case at bar.

We apprehend that joint guarantors would be included under the term "joint debtors" as used in the Statute and would be governed by the same rules as other joint debtors, where it is shown that the Statute applies.

Black in his law dictionary has defined the word "compound" as follows: "To compromise; to effect a composition with a creditor; to obtain discharge from a debt by the payment of a smaller sum." This Court in the *Meyer case, supra,* with reference to what is meant by "the amount compounded," said: "Evidently it does not mean the whole debt. That construction would make the Statute of no effect at all."

We do not think the transaction here involved constituted a "compounding" of the debt, for two reasons: (1) The circumstances of the case show that the release of Purdy and Bland was made by the guardian in good faith in order that the loan might be continued as an investment for the ward. The guarantors, Purdy and Bland, offered to pay the indebtedness in full. The guardian refused to accept payment and instead executed a release in favor of Purdy and Bland. Payment of the entire indebtedness having been tendered to him and having been refused, the retention of the bond after the release of Purdy and Bland was in effect a new loan, without guaranty. The transaction is just the same as if the loan had been paid and a new loan of the same amount made to the same debtor upon the same security, but without guaranty. (2) There was no compromise of a liability by

the payment of a smaller sum nor any part payment of the debt as a credit upon the debt, to which the guarantor not specifically released could look to ascertain the amount of credit which he could set up by way of discount against the creditor. If it should be asked how much Purdy and Bland paid on the debt and, therefore, how much Levi would be entitled to have credited on the debt when it came his time to pay, it is seen that no such fixed sum can be arrived at, and therefore the terms of the Statute allowing the non-compounding debtor a credit of the amount paid on the debt by the compounding debtor would be of no effect. There was no "compounding" of the debt by Purdy and Bland, but a tender of the amount due, which tender was refused by the guardian.

III. The appellant also contends that Levi was a several rather than a joint guarantor, but an examination of the instrument containing the guaranty, in the light of all the circumstances surrounding its execution and of the other purposes intended to be served by the instrument, shows the guaranty to be a joint one.

The petition for rehearing is dismissed, and the order staying the remittitur revoked.

Mr. Justice Cothran (dissenting): I am impressed by the position taken by the petitioner, that although Purdy and Bland may have been discharged by the release executed by the guardian Schwartz (as held in the opinion which has been filed), the release of them does not discharge the executor of the will of Abe Levi, the third guarantor of the note and mortgage in question (the opinion holding to the contrary). There is no doubt as to the proposition, that *at law,* the voluntary release by the obligee of a cosurety or co-guarantor discharges the other. It is held, however, in *Massey v. Brown,* 4 S. C., 85, that the rule in equity is quite different:

"Equity construes a release according to the intention of the parties, and will give it no operation beyond the design or the purpose it was intended to accomplish."

The statement in the *Massey case,* "The same rule [referring to the rule at law], will generally prevail in equity," is clearly inconsistent with the rule as stated above. It is impossible that the rule at law which absolutely discharges the unreleased debtor is the same as the rule in equity, which is based upon the intention of the parties.

When the plaintiff sues upon a guaranty he makes out a *prima facie* case by proof of the guaranty. The guarantor who claims a discharge must establish it by proof of the release of a coguarantor, and that the intention of the parties in the transaction was to release him; it is a part of his defense. It is questionable whether there is the slightest evidence in the case tending to show that the guardian, in releasing Purdy and Bland, intended to release Levi. The transaction was between him and the released guarantors, not between him and Levi; the latter was not consulted in the matter, and was not put in a worse plight by the release of the others—in fact, he was benefited by it. The modern equity rule is that the release of one guarantor is a discharge of the other guarantor only to the extent that the release guarantor was liable. This seems to me the just and equitable rule regardless of the matter of intention. Of course the release of the principal on a note discharges the surety, for the reason that if the surety should be required to pay, his right of reimbursement by the principal would have been annihilated.

The equity rule is a concession to the unreleased joint obligor, for it holds him, not to his original obligation to pay the whole, but only to his obligation *pro tanto,* for the reason that his right to contribution by his coguarantor is protected; he is only made liable for what he would have been if he had paid the whole and got back half from the other.

"Under the common-law rule, when cosureties were bound jointly a release of one discharged all; but in equity the cosureties remained liable for their proportionate shares, and under the modern law a covenant not to sue, or a release of one cosurety, does not discharge the other, but he remains liable for his proportionate share of the indebtedness, especially if the surety released has paid his own proportionate part." 32 Cyc., 156.

In *Singleton v. Shepherd,* 196 Mo. App., 505; 183 S. W., 1077, the Court said:

"Each of two sureties owes the entire debt to the creditor, and if he releases one he releases the other for one-half the debt; but, as between themselves, each owes one-half the debt, and if one settles his half at a discount, we do not see why the other should ask him to come in and help settle the other half."

In *Darland v. First Nat. Bank,* 177 Ky., 261; 197 S. W., 826, the Court said:

"This is a case where a levy was made on a cosurety's property, and afterwards either the lien was discharged or the levy released by the act of the creditor. In such a case the discharge of the lien or the release of the levy merely relieves the other cosurety to the extent of the proportion of the debt equitably due from him whose property was released. [Citing cases.] As between themselves, appellant and Wm. Derringer, whose property was released, were equally liable to the bank, and, appellant having been released from all liability to pay Wm. Derringer's one-half of the execution debt, interest, and costs, it follows that his prayer should have been granted to that extent."

In *Gillespie v. Smith* (D. C.), 299 F., 760, the syllabus is:

"While, under ordinary conditions, the rule of *stricti juris,* or even *strictissimi juris,* is properly invoked in behalf of sureties, and they should be released from their obligation by any dealings which operate to change or increase their

liabilities, a release by plaintiff of one of the joint and several sureties on the bond of his father's executor from liability released the other sureties only to the extent to which the released surety would have been liable upon the ultimate ascertainment of the sum to be paid by the solvent and responsible sureties, as the sureties stood in the same fiduciary relation to plaintiff as the executor."

See *Smith v. State,* 45 Md., 617, which is abstracted in note L. R. A., 1918-E, at page 96, and numerous other cases cited on pages 97 and 98.

In *Poullain v. Brown,* 80 Ga., 27 ; 5 S. E., 107, the syllabus is :

"In an action against the sureties of a former administrator by the administrator *de bonis non,* defendants cannot plead a release of their liability by reason of the plaintiff having, as administrator of one of their cosureties, paid out the assets of such cosurety's estate to his heirs, as such action, if a discharge at all, as to the defendants, was only so *pro tanto.*"

In *Lewis v. Armstrong,* 80 Ga., 402; 7 S. E., 114, the syllabus is :

"A judgment against defendant having been affirmed, he obtained, without the consent of the surety on his supersedeas bond, an injunction restraining further proceedings. Held, that a release of the surety on the injunction bond released the surety on the supersedeas bond, at least to the extent of the property owned by the other surety."

In *Hallock v. Yankey,* 102 Wis., 41; 78 N. W., 156; 72 Am. St. Rep., 861, the syllabus is :

"If one of two sureties on a note is discharged from liability by reason that the time of payment thereof has been extended without his consent, his cosurety is thereby released from liability for one-half of the amount of the note."

"The release of one surety operates to release other sureties on the same contract or undertaking only to the extent

of his aliquot share of the whole liability." Note to 72 Am. St. Rep., 861, citing *Saint v. Wheeler*, 95 Ala., 362; 10 So., 539; 36 Am. St. Rep., 210.

See, also, 2 Story Eq. Jur. (14th Ed.) § 676.

It seems to me that at best the rule at law which would discharge a joint obligor because another had been released is an unreasonable conclusion unless the unreleased obligor was damnified by the release. If, as the equity modern rule holds, the unreleased obligor is released only *pro tanto,* he has no right to complain. In fact he has been benefited to that extent, as otherwise he would have been liable for the whole.

There is another view that might be taken of the matter: The opinion which has been filed, very correctly, I think, states:

"We are satisfied that all parties acted in good faith in the matter; there is no doubt, as is disclosed by the testimony, that the investment without the guaranty (of Purdy and Bland) was a good one—in fact it is doubtful whether a better one could have been secured by the guardian at that time—and that if the guardian had then applied to the Court for permission to release the guarantors and be allowed to retain the investment, the Court would have granted the request. And no reason appears why the Court should not give effect now to what it would have done then."

I think this is the proper ground upon which to base the release and discharge of Purdy and Bland. It has often happened that a trustee of any kind has committed a strictly irregular act, but one which ordinary care would suggest as being in the interest of his charge; this being made to appear, the Court would confirm *nunc pro tunc* the action of the trustee. But in doing so the trustee runs the risk of such later confirmation.

The action of the guardian in this case must be viewed in this light, and unquestionably, as held in the opinion, the

Court would have approved of *the release of Purdy and Bland;* but *non constat* does it appear that in the approval of the release of these guarantors who offered something substantial for the release, the Court would have ordered the release of Levi, who was not at all concerned in the transaction and doubtless knew nothing of it.

It has been held in many cases that 'a release of one co-obligor by order of Court, as an act of the law, stands on different principles than does a release by the voluntary act of the obligee." Note L. R. A., 1918-E, 95. *Ulrich v. Hoefling,* 23 Tex. Civ. App., 289; 56 S. W., 199.

For these reasons I think that there is sufficient ground seriously to doubt the correctness of the opinion discharging the estate of Levi, as to justify a reargument of the case upon this ground alone.